Ithiel C. Towner *et al.*

*v.*

Robert S. Tickner *et al.*

*Filed at Ottawa January 22, 1885.*

1. Specific performance—*by vendor against purchaser—of the matter of possession of the premises sold—as affecting the right of the vendor to a specific performance.* At the time a contract for the sale of a mill and mill property was made, the same was in the possession of a tenant of the vendor, who was entitled to three months' notice to surrender such possession. Notice was given him so that he would have to give possession on the day the parties were to perform the contract of sale and purchase, and he was willing to give possession at the appointed time, but was assured by the purchaser that he need not do so on his account. The vendor tendered a deed for the property, and offered to give possession, which was refused: *Held*, on bill for specific performance, that so far as delivery of possession of the real property was concerned, the purchaser was in no position to make any just complaint.

2. Same—*trifling deficiencies—as, a water wheel of a mill out of repair—as an excuse for purchaser not performing.* A purchaser of mill property, etc., refused to perform his contract on the ground that a water wheel was out of repair, or was not in as good a condition as it was represented. The defect could have been made good at a very small expense, and the attention of the vendor was not called to the defect so as to enable him to make the needed repairs: *Held*, that such trifling defect was no bar to a bill for specific performance, in which compensation was allowable for such defects.

3. Same—*want of title in the vendor as to some of the machinery connected with mill property sold—duty of purchaser to notify vendor—compensation, not forfeiture.* The owner of a mill and machinery therein, then in the possession of a tenant, made a written agreement for the sale of the mill property, with a water power appurtenant thereto, and the machinery used in and about the mill, described in a written memorandum thereof,—deed for the real estate, and bill of sale of the movable machinery, to be given, with possession, by a day named. It turned out that the tenant claimed some of such machinery and the right to remove the same, but the vendor did not learn of such claim until on the hearing on bill for specific performance, he having previously tendered the purchaser the deed and bill of sale, when the latter refused to complete the contract, without pointing out to the former the articles claimed by the tenant: *Held*, that such claim of the tenant furnished no bar to a bill for specific performance, the vendor being guilty of no fraud, and willing to supply such articles as the tenant claimed, if he had

been notified of the claim. In such case, compensation should be made for the articles in fact not owned by the vendor at the time of the sale.

4. SAME—*compensation for deficiency in subject matter of sale.* Where a purchaser gets substantially all for which he contracted, he will not be permitted, in equity, to refuse to perform the contract on account of a slight deficiency, when full compensation can be made in money, and when the deficiency is occasioned by no bad faith on the part of the vendor.

5. SAME—*where a part of the movable machinery sold was on land of another.* The purchaser of a mill and mill property, including movable machinery and apparatus used in connection with the mill, will not, in a court of equity, be justified in refusing to perform his contract on the ground that a platform and a "lean-to," so called, connected with the mill, is on the land of an adjoining owner, who makes no claim thereto; nor will the fact that a tenant occupies a small space of the ground as a carpenter shop, which in no way affects the profitable use of the mill, especially when it appears the occupant has no valid claim to hold for any definite time, furnish any excuse for repudiating the contract of sale.

APPEAL from the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding.

The bill in this case was brought by Robert S. Tickner and John L. Tickner, against Ithiel C. Towner and S. P. Richards, in the City Court of Elgin. Afterwards, the venue was changed to the circuit court of Kane county, where the cause was tried, and a decree rendered against defendants, to reverse which they have brought the case to this court on their appeal. The facts of the case sufficiently appear in the opinion of the court.

Mr. R. N. BOTSFORD, for the appellants:

In order to induce a court of equity to enforce the specific performance of a contract, it must be founded on a good consideration,—it must be reasonably fair and just. *Sear* v. *Chouteau,* 23 Ill. 39.

The party seeking enforcement must stand prepared to meet the scrutiny of the court, and he must show what he asks is not unjust or oppressive to the defendant. *Stone* v. *Pratt,* 25 Ill. 25.

It is only on the principle that it is unjust and inequitable to permit the contract to remain unexecuted, that a court of chancery assumes jurisdiction to enforce it. *Tamm* v. *Lavalle,* 92 Ill. 263; *Brix* v. *Ott,* 101 id. 70.

A specific performance of a contract is not decreed merely because a legal contract is shown to exist. It will not be decreed as a matter of course. *Alexander* v. *Hoffman,* 70 Ill. 114; *Gosse* v. *Jones,* 73 id. 508.

Appellees made no effort of any kind to put themselves in a condition to perform their contract, but they now ask appellants to excuse their misrepresentation, their deception, their indifference, and inability to perform, and demand from appellants a literal compliance on their part. This conduct on the part of appellees the law will not approve. *Brown* v. *Cannon,* 5 Gilm. 174; *Walker* v. *Douglas,* 70 Ill. 445; *Seymour* v. *Delancy,* 6 Johns. Ch. 222.

A court of equity has no power to alter contracts of parties, but must enforce them as made. *Kemp* v. *Humphreys,* 13 Ill. 573; *Chrisman* v. *Miller,* 21 id. 227; *Steele* v. *Biggs,* 22 id. 643; *Heckard* v. *Sayer,* 34 id. 142; *Stow* v. *Russell,* 36 id. 19.

Mr. J. W. Ranstead, for the appellees:

Appellants, by informing the tenant not to give up possession of the real estate, are estopped from saying appellees could not then deliver possession. *Risinger* v. *Cheney,* 2 Gilm. 84.

Where no objection is made to a tender, but a refusal to perform the contract is placed on other grounds than a performance or ability to perform, the tender will be good. *Carbus* v. *Lead,* 69 Ill. 206; *Morgan* v. *Herrick,* 21 id. 493; *Williams* v. *Bank,* 2 Pet. 102; *Thayer* v. *Star Mining Co.* 105 Ill. 548.

Appellants' attorney omits the qualification to the rule, that the fraud, imposition or mistake must be about something

which is material, and goes to the essence of the contract. In other words, the misrepresentation or mistake must concern something constituting an inducement or motive, without which the contract would not have been made, and by which the party defending has been misled to his injury.    *De Wolf* v. *Pratt,* 42 Ill. 198 ; *Smith* v. *Richards,* 13 Pet. 37 ; 1 Story's Eq. Jur. sec. 151 ; Waterman on Specific Per. secs. 311, 359 ; Fry on Specific Per. (2d ed.) sec. 457 ; Pomeroy's Eq. Jur. secs. 856, 860, 868 ; Kerr on Fraud and Mistake, 73, 74.

Compensation, not forfeiture, is the universal rule of equity, and a vendor, notwithstanding he can not convey strictly according to his contract, and it appears that the part which can not be conveyed is of small importance, or is immaterial to the enjoyment of that which may be conveyed to him, may insist on a specific performance, with compensation to the purchaser.    *De Wolf* v. *Pratt,* 42 Ill. 198 ; *King* v. *Bardeau,* 6 Johns. Ch. 38 ; *Davis* v. *Parker,* 14 Allen, 94 ; *Hepburn* v. *Auld,* 5 Cranch, 262 ; *Winne* v. *Reynolds,* 6 Paige's Ch. 407 ; *Dyer* v. *Hargrave,* 10 Ves. 507 ; *McQueen* v. *Farquhar,* 11 id. 467 ; *Scott* v. *Hanson,* 1 R. & M. (5 Eng. Ch.) 129 ; *Lewin* v. *Guest,* 1 Russ. (46 Eng. Ch.) 290 ; Waterman on Specific Per. secs. 499, 502, 503 ; Kerr on Fraud and Mistake, 361, 363.

Mr. Justice Scott delivered the opinion of the Court:

The written contract between the parties which complainants seek to have specifically performed, is set forth in the bill, from which it appears complainants sold to defendants certain real property described definitely as being in the city of Elgin, on which there was a planing mill, and certain machinery particularly described in the agreement, and also the right to use for manufacturing purposes a certain quantity of water running in the Fox river, at and for a certain price to be paid by defendants.   As part payment defendants were, by the terms of the agreement, to assume and pay a mort-

gage on the premises, and give their promissory note payable within five years from the date the contract was to be performed. The contract was to be performed by both parties on the first day of April, 1881. The real estate described in the contract was to be conveyed by complainants to defendants by warranty deed, in fee simple, and a bill of sale of the machinery described in the contract was to be made and delivered with the deed, and possession given. On the first day of April, 1881, complainants tendered to defendants a deed for the lot sold, and also a bill of sale for the machinery, and demanded a compliance with the contract by defendants, which they refused to do.

There is no question made as to complainants' title to the real estate and the water power mentioned in the contract, nor that complainants tendered at the appointed time a sufficient warranty deed for the property. Defendants placed their refusal to comply with the contract on other grounds, which will be presently noticed. It may be remarked the testimony concerning the matters in contention between the parties is so conflicting, it is exceedingly difficult to ascertain the exact facts. The parties to this transaction seem to be honorable people, and the conflicting statements as to the material facts may arise from honest differences.

So far as the delivery of the possession of the real property is concerned, defendants are in no position to make any just complaint. At the time the contract was made, on the 24th day of December, 1880, the mill situated on the lots was in possession of Smith Hoag. He claimed he was entitled to three months' notice to surrender the possession, which was accorded to him. Notice was, in fact, given, so that he would have to give possession on the day the parties were mutually obligated to perform the contract. The testimony is full to the point, Hoag was willing to surrender the possession at the appointed time, and no doubt would have done so had he not been assured by defendants that he need not .

do it on their account. On this branch of the case there is no real controversy. The matters insisted upon as an excuse for the non-performance of the contract are of no very great importance, and do not seem to affect the value of the property in any considerable degree. Complaint is made the water wheel was out of repair, or perhaps was not in as good condition as it was represented to be. The defect that was found to exist could have been made good at a trifling expense. One witness said it could be done in an hour or two, at a cost of two dollars, and another stated that it would cost fifteen dollars to make the repairs. The condition of the wheel was unknown to complainants, and had their attention been called to it the necessary repairs would no doubt have been made, so there could have been no complaint on that score.

The parties do not agree as to the movable machinery that was agreed to be sold to defendants, and that was to be embraced in the bill of sale that was to be made. Defendants insist they bought other things than those enumerated in the written agreement. As to what was in fact agreed to be sold, there is a disagreement, and no doubt an honest one. It is claimed defendants bought all the machinery that was in the mill at the time the contract was made, except a new belt. As has been seen, Hoag was in possession of the mill, and claimed the belt and some other things as his own, and that he had the right to remove them. His claim of ownership to many of the articles of machinery was disputed, and there is evidence that affords some ground for the belief that complainants honestly thought they owned all that was in the mill except the belt, and that was expressly excepted from the articles sold, in the agreement. Be that as it may, before the contract was written one of defendants and one of complainants went to the mill to examine the machinery. Defendant made a memorandum of articles of machinery, and it seems it was from that memorandum the agreement was written. At that time defendant said the boys at the mill

had told him that other belts did not belong to complainants, and there is evidence that tends to show that defendants were told, previous to signing the contract, if there were any belts belonging to Hoag, complainants would buy them or furnish new ones. But the evidence will show complainants were allowed no opportunity to supply any articles of machinery, after it was discovered some may have been wanting, to fulfill the contract. Some complaint is also made that Hoag had a carpenter shop on the premises that he insisted he would not remove before the time of contract was to be performed. It occupied a small space, and did in no way affect the profitable use of the mill for the time being. As the evidence is understood, Hoag had no valid right to keep the shop there for any definite time, and could have been ejected at any time, and no doubt would have been had defendants not expressly told Hoag he need not surrender the premises on their account. There was a platform, and what is called a "lean-to," connected with the mill, both of which stood on the land of an adjoining owner; but it does not appear he claimed any interest in the platform itself, or the "lean-to," so that fact occasioned no serious detriment.

Conceding, as may be done, there were some articles of machinery in the mill that defendants might fairly insist should go with the purchase, that in fact belonged to Hoag, complainants were allowed no opportunity to supply the wanting machinery. Some time before the day appointed for performing the contract, defendants had absolutely refused to perform it, and told Hoag he could suit himself about moving out of the planing mill. There is a conflict in the testimony as to the cause they assigned for the non-performance of the contract, but none as to the fact they absolutely refused to go on with the contract. Had they pointed out the articles of machinery they insisted they had bought, and when it was ascertained that Hoag claimed some of them, complainants could have supplied such as Hoag claimed to own. There is

some evidence tending to show defendants knew that complainants disputed Hoag's ownership of anything in the mill except a new belt, and that they never pretended to sell. On the trial, after it was disclosed by the testimony of Hoag that he claimed some of the machinery, complainants obtained leave to amend their bill, which they did by stating that they had learned for the first time while the witness (Hoag) was testifying in the case, that he claimed to be the owner of a portion of the machinery in the mill, and while they believe themselves to be the owners of such property, yet if it should be found otherwise they were willing to offer and allow defendants a reasonable compensation therefor. That was done by a decree of the court, and the facts of the case seem to bring it within the rule of law, where compensation may be made to the purchaser for that which is wanting, and the party required to perform the contract. The doctrine of the cases in this and other courts is, that although there may be a deficiency in the property sold, if the deficiency is inconsiderable, and does not materially affect the value of the remainder, the purchaser may be compelled to accept compensation for such deficiency, and perform the agreement. (*De Wolf* v. *Pratt,.* 42 Ill. 198.) Where the purchaser gets substantially all for which he contracted, he ought not to be permitted to refuse to go on and perform the contract on account of a slight deficiency, when full compensation can be made in money, and where the deficiency is occasioned by no bad faith on the part of the vendor. The rule on this subject is a sound one, otherwise there might be in many cases a failure of justice. It is seldom the facts present a stronger case for the application of that rule of compensation which is often adopted that justice may be done. The testimony is to the effect complainants in good faith believed they were owners of all the machinery they sold to defendants with the mill. The bill of sale they tendered contained all that was specified in the written agreement, and it seems to have been in the mill ready to be deliv-.

ered.   If, as defendants insist, other machinery not specified in the written contract was, in fact, sold with the mill, and which was afterwards claimed by the occupying tenant, complainants ought to have been allowed, on demand being made upon them to do so, an opportunity to supply it; or, in the absence of such opportunity, it was just they should be permitted, when it was discovered some machinery was wanting, to offer compensation, as was done.   In this respect the action of the court was in conformity with equitable principles generally recognized as applying in such cases.

On the whole testimony considered, it is thought the decree is right, and it will be affirmed.

*Decree affirmed.*