(No. 20996.
JOHN F. BINDER *et al.* Defendants in Error, *vs.* RUDOLPH
HEJHAL *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1931.*

John C. Setecka, and B. M. Steiner, for plaintiffs in error.

Henry O. Nickel, for defendants in error.

Mr. Justice Dunn delivered the opinion of the court:

John F. Binder and Jane Binder, his wife, filed a bill in the superior court of Cook county against Rudolph Hejhal and Mary Hejhal, his wife, for the specific performance of a contract for the exchange of real estate owned by the parties, respectively. The bill was answered, and upon a hearing based upon a master's report a decree was rendered in favor of the complainants and against the defendants granting the relief prayed for. The defendants have sued out a writ of error.

In August, 1929, the complainants owned lots 1 and 2 in block 16 of a certain subdivision in the city of Berwyn, on the corner of Eighteenth street and South Oak Park avenue, facing east on the avenue, lot 1 being a vacant lot on the southwest corner of the intersection and lot 2, adjoining lot 1 on the south, having upon it a two-apartment brick building. The defendants owned a lot and five feet off the north side of another lot at the southeast corner of

Clarence avenue and Nineteenth street, in Berwyn, upon which was a nine-flat brick building. About September 4 negotiations began between the parties for an exchange of this real estate but no exchange was consummated. On October 15, as a consequence of further negotiations, the parties met at the defendants' premises, and after an examination of the apartments an agreement was reached for an exchange of the property and all went to the office of Tetrev & Kotaska, where a written agreement was executed, by which the complainants were to take the nine-flat building owned by the defendants subject to a first mortgage of $35,000 and a second mortgage of $4000, and convey their two-flat building subject to a mortgage of $10,000 and the vacant lot subject to a mortgage of $1500, the taxes, water, rentals, insurance, coal and interest to the date of the completion of the transaction divided *pro rata*. The agreement also provided that the complainants should pay a commission of $900 to the brokers, Killian, Stieber and Tetrev & Kotaska and the defendants should pay $350. The agreement stated the values upon which the contract was based, $60,000 for the defendants' property, which was subject to the two mortgages for $39,000, leaving an equity of $21,000, and $32,500 for the complainants' property subject to the two mortgages for $11,500, leaving an equity of $21,000. The agreement was written in longhand by Stieber. Both parties were asked the dimensions of their lots, and the complainants gave the dimensions of their lots as 58 by 137 feet and the defendants gave theirs as 38½ by 127 feet. The dimensions of the complainants' lots were actually 57 feet 7¾ inches by 135 feet 9⅝ inches, and of the defendants' lots were 38½ feet by 125 feet. The next day Stieber ascertained that a bill had been filed against the defendants by some of the neighbors in their vicinity which involved the question whether they had built the building on a larger space than was permitted under the zoning ordinance. The defendants agreed to give a

written guaranty to protect the complainants from any damages which might arise from that suit, and a new contract was drawn up providing for such guaranty and containing a clause for liquidated damages of $5000 on the failure of either party to consummate the transaction. This contract was signed by the complainants but the defendants refused to sign it because of the clause allowing liquidated damages, and they advised the brokers that they wished to consult with Frank C. Topinka, president of the American State Bank of Berwyn. The contract was thereupon submitted to Topinka, the clause fixing liquidated damages was stricken out and a third contract was prepared and presented to Topinka, who read it and made changes in his own handwriting with reference to the payment of the commission to the brokers. This contract was executed by the defendants on October 19, 1929, but was dated October 16, the date of the original contract, the two contracts being the same except that the last contained a guaranty by the defendants to protect the complainants against damages on account of the pending case and provided that the commission to be paid by the defendants should be paid in monthly installments on or before six months, without any interest. At that time there was a zoning ordinance in Berwyn which restricted the use of the property of the complainants to the construction of two-apartment buildings, with the exception that a four-apartment building might be constructed on the corner upon securing frontage consents of adjoining property owners. This contract describes the complainants' property as lot 1 in block 16 in the first addition of a named subdivision of a certain tract in the southwest quarter of section 19, subject to a first mortgage of $1500, and lot 2, in the same block 16, improved with a two-flat brick building, commonly known as 1802 South Oak Park avenue, Berwyn, subject to a first mortgage of $10,000, followed by the words, "Frontage of Lots 1 and 2 in Blk 16—1st Add'n to McInt. Met. 'L.'

Sub is 58x137 ft." At the time the dimensions of the different parcels of land were stated by the parties they were not considered material elements in the execution of the contract. The complainants and the defendants each examined the property of the other parties to the agreement and both had agreed to exchange their respective parcels for the price fixed upon them without reference to the dimensions of either parcel, and the statements made by both the complainants and defendants as to the dimensions of their respective parcels were not made with any intention of defrauding either of the parties and did not constitute any element inducing either to enter into the contract. The zoning ordinance was duly passed by the city of Berwyn and the facts in regard to it were easily accessible to all the parties. The complainant John Binder was an engraver and the defendant Rudolph Hejhal was a carpenter and building contractor. He examined the complainants' property several times and said of the vacant lot that it looked narrow and after such examination entered into the contract. About October 22 Stieber and Killian called on the defendants and asked them about consummating the transaction, and they refused to go ahead with it. They told the real estate agents that they did not want the building, and when asked about the expenses they said they did not feel like going through with the transaction and if the judge told them to pay they would pay. After the defendants said they would not go ahead with the contract the complainants submitted to them an opinion of title from the Chicago Title and Trust Company for a guaranty policy for the property owned by the complainants. About December 3 the complainants, through their attorney, advised the defendants that they would be at the office of the American State Bank at Berwyn on Thursday, December 5, at 10:00 o'clock A. M. and would give a warranty deed from the complainants to the defendants and would be ready to consummate the contract entered into between

them and would expect to receive a deed for the property owned by the defendants. The complainants were at the office at the appointed time and had with them such a deed executed by them to the defendants, but the defendants were not there, and afterward, on the same day, Stieber, the real estate agent, and Hazel M. Fry, the attorney, went to the defendants' home and tendered a warranty deed to the defendant Mary Hejhal, who was the only one at home at the time, for the parcel of real estate owned by Binder, and Mrs. Hejhal declared she would not sign any papers.

The master's report found that the contract between the complainants and the defendants was entered into understandingly and that no fraud, circumvention or deceit entered into the execution of the contracts and that they were binding obligations on all the parties which should be enforced; that the difference in dimensions of the parcels of land as set out in the contract and the actual dimensions were not material elements that entered into the execution of the contract and were not given to deceive either of the parties to the contract; that the complainants made a demand for the consummation of the contract and tendered a deed to the parcel owned by them that they were bound to convey and did all things necessary to require the defendants to consummate the deal; that the contract should be specifically enforced, and recommended that a decree for its specific performance be entered. Objections to the report were overruled by the master, and being ordered to stand as exceptions were overruled by the court, and the court entered a decree that the contract be specifically enforced; that the deed tendered by the complainants be delivered to the defendants, and that when the defendants tendered to the complainants a second mortgage, as specified in the contract, the complainants should execute and deliver to the defendants the second mortgage for $4000, as provided in the contract, and that the defendants

should execute and deliver, within thirty days, to the complainants a conveyance in fee of their premises described in the contract, and that the complainants should pay to the defendants for the deficiency of four and three-fourths inches of the property fronting on South Oak Park avenue the sum of $79.20.

The plaintiffs in error contend that the evidence brings their case within the rule that specific performance will not be decreed merely as a matter of right, and a court of equity will not enforce specific performance unless the complainant comes into court with clean hands or if it would be unconscionable to decree specific performance. The principle of law is correctly stated, but the evidence does not show a case within the rule. The ground of complaint alleged is, that the answer made by the defendant in error John Binder when he was asked by Stieber, the real estate agent who was writing the first contract in longhand, for the dimensions of his lot, that they were 58 feet by 137 feet, when, in fact, they were 57 feet 7¾ inches by 135 feet 9⅝ inches, was a material misrepresentation of fact upon which they relied and had a right to rely, and that there was a substantial difference in the size of the lot which should prevent a decree for specific performance. They also contend that it appears from the evidence that the defendants intended to erect an apartment building on the vacant lot and the deficiency in size would make it impractical and unprofitable to erect such a building, and the variation was therefore so substantial that a court of equity should not compel the defendants to take less than the complainants agreed to convey. They also contend that the complainants represented that the property was zoned so as to permit the erection of a seven-apartment building, when, in fact, it was zoned so as to permit the construction of two-apartment buildings only, except that on the corner lot a four-apartment building might be erected upon securing the adjoining property owners' consent.

The contract contained a legal description of Binder's property which was on record, to which Hejhal had access. He had all the means of knowledge as to the fact which Binder had, and under the circumstances in which the question was asked and the answer given, the error in the statement cannot be regarded as of material inducement to the contract. The parties having already seen and examined the property and knowing all about it, the innocent or careless mistake of the small amount of four inches in width was of trifling importance. It could not have affected the making of the contract. Hejhal was a building contractor. The zoning ordinance had been duly passed and was in force. He knew that a zoning ordinance was in force in the village of Berwyn, for he asked whether the property was zoned in favor of apartment buildings; and personal knowledge had been brought home to him of the existence of the zoning ordinance, for he had been sued for the construction of a building on the property which he was exchanging with Binder in violation of the ordinance. Binder denied that anything of the kind was said to him or any question of the kind was asked of him, that he made any statement about the zoning ordinance, or that Hejhal told him that he wanted to erect an apartment building on lot 1. The place where the line ran between lots 1 and 2 was of no importance so far as the construction of an apartment building was concerned, for the building on the complainants' lot 2 was set back two and a half feet from the lot line of lot 1, the corner lot, and this space could have been used for the apartment building which, it is now claimed, it was Hejhal's purpose to build. The statement that the width of the two lots was 58 feet instead of 57 feet 7¾ inches was entirely immaterial so far as the construction of an apartment building on the north part of the property was concerned.

The evidence shows that the defendants had inspected the complainants' property twice and that Hejhal had

stepped off the width of lot 1 on the corner and remarked that it seemed "quite narrow" and had then agreed to make the exchange. In the longhand contract first written by Stieber the property of each of the parties was described by the street numbers of the buildings, the Hejhals' as Nos. 6618 and 6620 West Nineteenth street and the Binders' as No. 1802 South Oak Park avenue. Stieber, while writing the agreement, asked the dimensions, and each gave them substantially correctly but in the case of each slightly in excess of the actual measurement. In the later more formal contract written on the form of the Chicago Real Estate Board, Exchange Contract No. 85, the property of the Binders was fully described according to the plat of the subdivision, followed by the statement, "Frontage of Lots 1 and 2 in Blk 16—1st Add'n to McInt. Met. 'L' Sub. is 58x137 ft." The Hejhals' property was described by street numbers as in the handwritten original agreement, followed by the statement, "Lot is 38½x125 ft." correcting the original, which had been 127 feet. The exchange was not made on the basis of frontage valuation or square-foot valuation but on the basis of a gross sum as the value of the property on each side of the trade, $32,500 as the value of the complainants' property and $60,000 as the value of defendants,' the equity in each case being $21,000, so that it was an even trade. Under such circumstances a slight variance not affecting substantially the value of the property is immaterial. In *D'Wolf* v. *Pratt,* 42 Ill. 198, where it was attempted to bring such an alleged deficiency into the case, the defendant objecting to pay the money because, as he alleged, there was a deficiency in the land, the court said this was probably a mere subterfuge, as there was no proof of it, but if the fact were so, the purchaser might, notwithstanding, be obliged to take the land if the deficiency was inconsiderable and not impairing materially the value of the remainder. The doctrine announced in this and other courts in cases where there may be a deficiency in

the property sold is, that if the deficiency is inconsiderable and does not materially affect the value of the remainder the purchaser may be compelled to accept compensation for such deficiency and perform the agreement. Where the purchaser gets substantially all for which he contracted he ought not to be permitted to thereafter refuse to perform the contract on account of a slight deficiency when full compensation can be made in money and where the deficiency is occasioned by no bad faith on the part of the vendor. This rule of compensation is a sound one, which is often adopted that justice may be done where otherwise in many cases there might be a failure of justice. (*Towner* v. *Tickner*, 112 Ill. 217.) The rule is again approved in *Brelie* v. *Klafter*, 342 Ill. 622, and many cases are cited in support of it.

The rule in regard to the sale of a tract of land in gross by its proper governmental description, or by any other specific description by which its exact boundaries may be determined, is, that these boundaries will control the description in case of a discrepancy as to the quantity or number of acres, and neither the purchaser nor the seller will have any remedy against the other for any excess or deficiency in the quantity stated unless the excess or deficiency is so great as to raise a presumption of fraud; and where a sale of an entire tract of land by metes and bounds for a gross sum has been made and the parties have acted in good faith and no fraudulent representation has been made, neither party will be bound by a statement as to the quantity or number of acres contained in the tract except where such statement is expressly or by necessary implication made the essence of the contract. *Wadhams* v. *Swan*, 109 Ill. 46.

Stieber, Tetrev and Mackey, real estate dealers, who were acquainted with the property and had made many sales of real estate in the community, testified that the discrepancy of four and three-fourths inches in width and one

foot and two and three-fourths inches in length would nei-
ther affect the value of the property in any way nor interfere
with the erection of a two, four or seven-apartment building,
and that the front-foot value of the South Oak Park ave-
nue property was $200 a foot. On the other hand, another
real estate broker who had never seen the property in ques-
tion, testified, in answer to hypothetical questions in regard
to the feasibility of constructing on a corner lot 28 feet
wide and 137 feet long an apartment building two stories
high, composed of six four-room flats with a basement of
four rooms, and the relative availability for the same pur-
pose of a lot 27 feet 7¼ inches wide and 135 feet 9⅝ inches
long. He answered that the apartment building mentioned
could be built on the larger lot but on the smaller lot it
would be necessary to resort to a three-room kitchenette
apartment, and he gave the various sizes of the different
rooms which would be in the respective four-room or three-
room kitchenette apartments. He further testified that the
difference in value of the two lots mentioned in the hypo-
thetical question, one 28 feet by 137 feet and the other
27 feet 7¼ inches by 135 feet 9⅝ inches, would be from
$3000 to $5000. This evidence was incompetent for two
reasons: First, the invisible line constituting the division
line between lots 1 and 2 was not an impassable barrier.
If the defendants wanted to construct a building 28 feet
wide there was nothing to prevent their doing so, or even
one 30 feet wide, for the two and one-half feet of lot 2,
which was vacant and adjoined the south side of lot 1, was
there to be used in connection with lot 1 if the defendants
wished. Second, if the defendants wanted to build an apart-
ment building of the character mentioned in the questions
and described by the witness, they never exhibited any plans
to the complainants or told them of their purpose, at least
the evidence does not show it, and the complainants were
not responsible if the property failed to answer an intended
purpose of the defendants of which the complainants were

not informed. The defendants testified that Hejhal told Binder that he wanted to build an apartment building on lot 1, but the Binders, Stieber and Tetrev all denied it.

The decree ordered the complainants to pay to the defendants $79.20, which was the proportionate amount of the value of the 58 feet frontage represented by the four and three-fourths inches deficiency, as compensation for this deficiency, and this, in accordance with the decisions cited, the contract having been in all other respects performed by the complainants, entitled them to the decree of specific performance.

The defendants also claim that the complainants represented their property was zoned in favor of the erection of an apartment building while it was zoned for two-flat buildings only. Here, again, the proof is the other way. Hejhal knew that the corner lot was zoned for a two-apartment building and expected to have it re-zoned. After the contract was signed he told Mrs. Binder and Topinka that he was afraid it was going to cost too much money to have the property re-zoned. He was a building contractor who had built apartment buildings and bungalows in Berwyn and would naturally be expected to know, at least to some extent, the building regulations, including zoning ordinances, of Berwyn, while Binder was an engraver, who would naturally be expected to know nothing about it. Hejhal would not look to Binder for information about the building trade.

The contract was fairly and intelligently entered into and it would be inequitable to refuse its enforcement.

The decree is affirmed.                *Decree affirmed.*