RAYMOND W. MAY *et al.*, Plaintiffs-Counter Defendants, Appellees, *v.* GILBERT P. NYMAN *et al.*, Defendant-Counter Plaintiff, Appellant.

(No. 70-218;

Third District—January 26, 1972.

William E. Stewart, of Kewanee, for appellant.

Johnson, Martin & Russell, of Princeton, (Daniel K. Russell and Christ T. Troupis, of counsel,) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On March 14, 1966, the plaintiffs, Raymond W. May and Anna May, agreed to convey to the defendant, Gilbert P. Nyman, by a good and sufficient warranty deed certain lots and parts of certain other lots in Sunny Acres Subdivision in Bureau County, Illinois, A note in the sum of $4,000.00 bearing the same date was executed by the defendant and delivered to the plaintiffs in payment of the purchase price for the realty. The defendant had indicated that he desired to build a house for the purpose of speculation on the lots so the agreement for deed specifically provided for the delivery of a deed to lots numbered 9 and 10 upon the execution of the contract. Pursuant to this provision in the agreement a warranty deed conveying title to lots numbered 9 and 10 in the subdivision was executed and delivered by the plaintiffs and title to the lots vested in the defendant. The evidence is in dispute as to when the defendant began construction of a residence on the lots conveyed, it being his contention that he started in March, 1966. However, it wasn't until June of that year that he ordered the prefabricated home which he intended to erect on the lots.

On May 10, 1966, Shirley Donnelly, the owner of record of lots numbered 3 and 4, filed a lawsuit against the defendant and all other owners of record in the subdivision in which it was alleged that there

was an error in the Sunny Acres Subdivision plat. None of the parties contravened the fact that an error in the survey of the subdivision was made since the frontage line of lots 1 through 12 was designated on the recorded plat to be 1213.2 feet in length, when in fact it was subsequently discovered to be approximately 1200 feet in length. In the Donnelly suit the trial court entered an order on September 22, 1967, denying plaintiff's prayer for reformation of the plat and further dismissed all defendants from the suit except the Mays, who are the plaintiffs in the instant case. The trial court then resolved the Donnelly suit by ordering the Mays to convey to Donnelly 13 feet off the side of Mays' lot number 5. The defendant in his reply brief contends that the order did not call for a specific amount to be conveyed by the Mays to Donnelly, but one of the defendant's exhibits specifically shows the amount to be 13 feet. The Mays complied with the court order which effected a settlement of the boundary line dispute between lots numbered 4 and 5 in the subdivision. The evidence is contrary to the defendant's contention that he had no knowledge of the survey error prior to the time he entered into an agreement to purchase the lots from the plaintiffs which are set forth in the contract between them. Although a defendant in the Donnelly suit, the defendant did not retain counsel and took no affirmative action to obtain a boundary line adjustment in regard to his lots. In fact, after filing of the Donnelly suit he made a payment on his note which was held by the plaintiffs and he continued with the construction of the residence on lots numbered 9 and 10.

Upon defendant's failure to complete payment on the note, the plaintiffs had a judgment by confession entered against him. The defendant then obtained an order opening up the judgment and claimed as a defense that the plaintiffs could not convey merchantable title to the real estate for which the promissory note was delivered as consideration. The defendant also filed a counterclaim for damages based upon alleged breach of contract. The trial court entered an order reinstating the judgment by confession and denying defendant's counterclaim. It is from this order that the defendant appeals.

Several issues are raised by this appeal but we will first concern ourselves with what we believe to be the basic contention presented by the defendant, which is to the effect that the plaintiffs could not convey merchantable title to the real estate for which the promissory note was given as consideration. The defendant's claim of unmerchantability depends entirely on his contention that the survey error and the resulting Donnelly suit impairs the title to the various lots subject to conveyance under the parties' contract. The record is absolutely devoid of any other alleged defect in the title to the lots in question.

It is the defendant's contention that as the result of the error in the frontage line of the subdivision he is unable to represent to prospective purchasers the size and shape of lots numbered 9, 10, 11 and 12 in the subdivision. We are first impressed with the fact that the evidence received by the trial court fails to establish that there was in fact a boundary dispute or deficiency in the quantity of real estate as far as the defendant's lots are concerned. True, that there was uncontradicted evidence of a 13.2 feet shortage along a line running the entire length of the subdivision, but the defendant completely failed to show where this shortage existed. The trial judge repeatedly recognized the defendant's failure to connect the faulty survey with the lots in question. He advised counsel for the defendant that all he had shown was that one line was short, but that defendant had totally failed to prove a boundary dispute or an existing shortage as to the quantity of land in regard to the lots in which he was concerned. Of particular interest and pertinence is the testimony of the witness Hauf, the owner of lots 7 and 8 in the subdivision. The defendant's lots numbered 9 and 10 lie north and adjacent to the Hauf lots. Hauf had employed a surveyor to establish the boundary lines to his lots and the surveyor in his presence measured from the northeast edge of the subdivision along the line running the length of the subdivision, being the one which is 13.2 feet short of the measurement which appears upon the recorded plat. The surveyor stopped at each lot corner shown in the plat until reaching the north corner of the Hauf lot numbered 8. Each of these measurements corresponded with those which appeared on the recorded plat of the subdivision and the measurements further included the frontage distances of lots numbered 9, 10, 11 and 12 which were the subject of the contract entered into between the plaintiffs and the defendant. In other words, according to the testimony of the witness Hauf, there was no shortage in the frontage lines of defendant's lots.

Throughout the entire proceedings before the trial court the defendant was unable to establish a shortage, boundary dispute or loss of any land whatsoever affecting the lots to be conveyed and we are of the opinion that his failure resulted from the fact that no such loss of land existed.

■■ However, assuming that there was a deficiency as to the quantity of land in the lots, would this be sufficient to make the title to the lots unmerchantable? In answering this question we must note that 12 lots fronted along the line which the plat erroneously indicated to be 1213.2 feet in length. According to the plat lot 1 was to have a frontage of 234.7 feet, lot 12 a frontage of 178.5 feet, and all intervening lots numbered 2 through 11 were to have frontages of 80 feet. The total actual shortage of this frontage line was 13.2 feet.

Of critical importance in determining the questions presented in this case is the fact that the land to be sold to the defendant was described as being lots numbered 9, 10, 11 and 12 and portions of lots 14 and 15 in Sunny Acres Subdivision. Nowhere in the agreement between plaintiff and defendant is the land involved described by dimensions or area. Further the record discloses that the defendant admitted that the plaintiffs made no representations to him concerning the quantity or dimensions of the various lots to be conveyed or that the lot lines shown on the plat coincided with the actual boundaries of the lots.

Under the circumstances presented in this case a slight variation or deficiency not affecting the value of the property is immaterial. In *DeWolf v. Pratt*, 42 Ill. 198, where it was attempted to bring such an alleged deficiency into the case, the defendant objected to pay the money because, as he alleged, there was a deficiency in the land and the court said that this was probably a mere subterfuge as there was no proof of it, but if the fact were so the purchaser might notwithstanding be obliged to take the land if the deficiency was inconsiderable and not impairing materially the value of the remainder.

■ It is further well established in our state that a deficiency in the quantity of land conveyed does not entitle the purchaser to a remedy where the tract is sold for a sum in gross and no fraudulent representation has been made. In *Wadhams v. Swan*, 109 Ill. 46, our Supreme Court stated:

"The rule in regard to the sale of a tract of land in gross by its proper governmental description, or by any other specific description by which its exact boundaries may be determined, is that these boundaries will control the description in case of a discrepancy as to the quantity or number of acres, and neither the purchaser nor the seller will have any remedy against the other for any excess or deficiency in the quantity stated unless the excess or deficiency is so great as to raise a presumption of fraud; and where a sale of an entire tract of land by metes and bounds for a gross sum has been made and the parties have acted in good faith and no fraudulent representation has been made, neither party will be bound by a statement as to the quantity or number of acres contained in the tract except where such statement is expressly or by necessary implication made the essence of the contract." See also *Binder v. Hejhal*, 347 Ill. 11, 178 N.E. 901.

■■ A lot in a town plat is an entity like a farm or a tract of land and is usually dealt with as such. A sale of a farm or tract, by name or general description, is a sale in gross and acreage is not the basis of the contract, even though it is mentioned by way of description. A sale of a lot the identity, location and dimensions of which are found in a town plat, must

be regarded in much the same way. It is not a sale by the front foot or by fractional part, unless the terms of the contract make it so. *Welch Publishing Co. v. Johnson Realty Co.*, 78 W.Va. 350, 89 S.E. 707, LRA 1917A 200, 1 A.L.R.2d 1, p. 44.

In the instant case the defendant did not allege nor did he prove any fraud on the part of the plaintiffs. Because there may be a slight deficiency in the size of the lots which were subject to an agreement for deed he urges that the plaintiffs cannot vest him with a merchantable title in and to the real estate. It is obvious that such is not the law in our state. A slight deficiency in quantity of land conveyed or to be conveyed cannot be used as a subterfuge in an effort to avoid payment of the purchase price.

■■ We are not unaware of the fact that our court can in certain cases follow the apportionment rule which provides that where a tract of land is subdivided into parts or lots, title to which becomes vested in different persons, none of the grantees is entitled to any preference over the others on discovery of an excess or deficiency in the quantity of land contained in the original tract; and the excess must be divided among or the deficiency must be borne by all of the parts or lots in proportion to their areas. *Francois v. Maloney*, 56 Ill. 399; *Martz v. Williams*, 67 Ill. 306; *Clayton v. Feig*, 179 Ill. 534, 54 N.E. 149; *Nilson Bros., Inc. v. Kahn*, 314 Ill. 275, 145 N.E. 340; *Balzer v. Pyles*, 350 Ill. 344, 183 N.E. 215.

In the case before us if the rule were to be imposed the apportionment of the alleged deficiency would not be predicated on the basis of square footage or acreage, but as the result of the nature of the error would concern only the loss of lot frontage. See *Balzer v. Pyles, supra;* 12 Am. Jur.2d Boundaries, Sec. 63.

Following the apportionment rule we find that if a shortage of real estate in fact exists as to lots in which the defendant is interested then his approximate loss of frontage would be .870 feet on each of lots numbered 9, 10 and 11. The plat calls for a frontage of 178.5 feet as to lot numbered 12, so the frontage on this lot would suffer a loss of 1.94 feet. These deficiencies are indeed trivial and the record is barren of any evidence that would support the defendant's claim that such deficiencies resulted in damages to him. Without reciting the evidence, it is sufficient to say that it supports the opposite conclusion in that there was uncontradicted and admissible testimony to the effect that even a greater loss of lot frontage would not have adversely affected the selling price of lots numbered 9 and 10 upon which the defendant constructed a residence.

■■ It is true that in certain circumstances the apportionment doctrine provides that when there is a deficiency in the property sold and where the deficiency is inconsiderable and does not materially affect the value

of the remainder the purchaser may be entitled to accept compensation for such deficiency, but in turn he must perform the agreement. (See *Towner v. Tickner,* 112 Ill. 217; *Brelie v. Klafter,* 342 Ill. 622; *Binder v. Hejhal, supra.*) However, in the light of all the evidence we do not believe that this is a case for the application of the apportionment rule, but if a deficiency in the quantity of land does in fact exist the law pertaining to sales for a sum in gross is applicable. Therefore the defendant's contention that he can refuse payment of the purchase price because title to the lots are unmerchantable as the result of such a deficiency is a contention without merit.

■■ The defendant further asserts that the Donnelly suit rendered title to the lots unmerchantable. We note that defendant had title to lots numbered 9 and 10 prior to the filing of the Donnelly suit and title to the remaining parcels of the real estate covered by the agreement for deed was to vest in him when his note representing the purchase price was paid in full. The defendant's assertion therefore raises the specific question as to whether he will be exposed to the danger of litigation questioning the validity of the title to this real estate. From the record it is abundantly clear that the Donnelly suit would not question title to the parcels of real estate in which the defendant is interested, but instead the suit related to the erroneous measurement of the frontage line of the subdivision. The allegations in the complaint clearly set forth an action pertaining to a boundary line dispute. The title to the defendant's lots numbered 9, 10, 11 and 12 was in no way questioned. All owners of record of the lots in the subdivision were made parties defendant but subsequently all were dismissed with the exception of the plaintiffs. Prior to trial the defendant did not deem it necessary to employ counsel but continued to expend money for the construction of a residence and it is revealing to recognize that after the Donnelly suit had been resolved he made a payment on the purchase price of the lots. The defendant's action and conduct can only indicate that the Donnelly suit failed to create in his mind any apprehension of title validity. He showed no concern regarding title validity until after he had defaulted in the payment of the note and judgment was entered against him.

■■ The effect of a decree (fixing a boundary line) is only to establish the corners and fix the line and does not affect the title to the property. *McNeil v. Allen,* 271 Ill. 178; *Ellis v. Whan,* 91 Ill. 77.

■■ The defendant cites several cases in support of his contention that the Donnelly suit rendered title to the property unmerchantable, *viz. Hayne v. Fenton,* 321 Ill. 442, 151 N.E. 877, where a partition suit was actually pending against the land involved; *Firebaugh v. Wittenberg,* 309 Ill. 536, 141 N.E. 379, where there was outstanding an inchoate

right of dower; and *Ableman v. Slader*, 80 Ill.App.2d 94, 224 N.E.2d 569, where a building code violation suit was actually pending against the property involved. We quarrel not with law set forth in the cases cited by the defendant, but we do not deem them applicable to the case before us. In *Hayne* and *Ableman* lawsuits were pending and directly aimed at the property in question. In *Firebaugh* an outstanding interest in the title itself existed. A party cannot be required to purchase a lawsuit (*Hayne v. Fenton, supra; Ableman v. Slader, supra*), nor should a purchaser be compelled to take a title with a cloud upon it. (*Humphrey v. Clement*, 44 Ill. 299). An inchoate right of dower is a valuable interest and more than a mere possibility. (*Firebaugh v. Wittenberg, supra.*) In the instant case there is no lawsuit pending and there was in existence no outstanding interest in the title to the land involved. A merchantable title is one free from a reasonable probability of litigation. (*Farmers & Merchants Bank of Vandalia v. Holland*, 309 Ill.App. 193, 32 N.E.2d 987.) We are of the opinion that the defendant was assured of such a title and we do not feel that the Donnelly suit should have created any apprehension in the mind of the defendant as to the validity of his title. That suit was resolved and as we have stated, the record fails to disclose the defendant was ever able to prove that a shortage in quantity existed as to the land which was the subject matter of the agreement entered into between him and plaintiffs. We can only conclude that the title to the real estate which the defendant agreed to purchase is free from the reasonable probability of litigation and that is all that the law requires.

For the reasons we have set forth the judgment of the circuit court of Bureau County is affirmed.

Judgment affirmed.

STOUDER, J., and ALLOY, P. J., concur.