MARY BLAKE WILFONG, Plaintiff-Appellee and Counterdefendant-Appellant, *v.* W. A. SCHICKEDANZ AGENCY, INC., *et al.*, Defendants.—(W. A. SCHICKEDANZ AGENCY, INC., Defendant, Counterplaintiff and Counterdefendant-Appellee; CLARK GABEL *et al.*, Defendants, Counterplaintiffs and Counterdefendants-Appellants.)

Fifth District   No. 79-334

Opinion filed May 29, 1980.—Rehearing denied July 17, 1980.

Kassly, Bone, Becker & Dix, P. C., of Belleville (Barry D. Dix, of counsel), for appellants Clark Gabel and Shirley M. Gabel.

Jones, Ottesen, Feickert & Derango, of Belleville (James R. Schmidt, of counsel), for appellee W. A. Schickedanz Agency, Inc.

Hillebrand, Cook & Shevlin, Ltd., of East St. Louis (Robert J. Hillebrand, of counsel), for appellee-appellant Mary Blake Wilfong.

Mme JUSTICE SPOMER delivered the opinion of the court:

This appeal arises from the auction sale of a parcel of real estate located in Monroe County, Illinois. The parties involved in the sale were Mary Blake Wilfong, seller; Clark Gabel and Shirley M. Gabel, buyers; and W. A. Schickedanz Agency, which acted as realtor.

The seller agreed to pay the realtor $400 plus advertising costs for conducting the auction at the site, or, if the real estate was sold, a commission of 6 percent of the sale price.

On the date of the auction, October 25, 1977, the buyers inspected the property, signed an agreement to purchase the real estate for the price of $32,500, and paid the realtor a deposit of $3,250. The balance was due on receipt of a "good and merchantable deed." The legal description of the property, which was attached to the agreement, included the following provision:

"Subject to the rights of others in and to that portion used for roadway purposes, and including the right of ingress and egress, along with others, over, along, and across the present existing roadway from the above-described tract southwesterly to the public road along the Westerly line of said Northwest Quarter of the Southwest Quarter, and subject to easements of record."

Apart from the described roadway, there was no access from the purchased property to a public highway. Along with the legal description, the buyers were given an aerial plat of the property, which showed that the roadway passed through the property of others.

The buyers subsequently received a commitment for title insurance from the Chicago Title Insurance Company, and on November 17, 1977, their attorney sent a letter to the realtor, objecting to the condition of the title as shown by the commitment. Specifically, the buyers objected to three exceptions stated in the commitment: (1) any outstanding mechanic's liens; (2) no guarantee of ingress and egress to the property; and (3) any existing rights-of-way for drainage tile, ditches, feeders and laterals.

On November 16, 1977, the seller executed a warranty deed conveying the real estate to the buyers. The deed was given to the realtor, to be delivered to the buyers at closing, when buyers were to pay the balance of the purchase price. The legal description in the deed made no mention of the roadway described in the October 25 attachment.

On December 13, 1977, the seller's attorney forwarded a letter from Chicago Title Insurance Company to the attorney for the buyers, which waived the exception regarding ingress and egress to the property. The seller's attorney included his own letter, informing the buyers that seller would issue an affidavit that there were no outstanding mechanic's liens

and would guarantee that the buyers would be held harmless from any unrecorded liens.

On December 30, 1977, the buyers made a demand for a return of their earnest money, $3,250. The demand indicated a continuing objection to the general exception relating to drainage laterals, and stated that "our client still has no report of the condition of title as to the roadway described in the attachment to the October 25th document."

On January 6, 1978, seller responded that the above objections did not render the title unmerchantable, and that she would retain the earnest money and resell the property. On January 31, 1978, seller filed a complaint naming the realtor as defendant on a breach of contract theory, and alleging that she was entitled to the earnest money paid to the realtor by the buyers.

Subsequently, the realtor filed a counterclaim for interpleader joining seller and buyers as counterdefendants. The counterclaim alleged that the realtor was claiming only its expenses and commissions, and asked for a judicial determination indicating to whom the remainder of the deposit money was to be paid.

The buyers subsequently filed a counterclaim against the seller and the realtor for a refund of the $3,250 earnest money, on the grounds that the seller had failed to tender merchantable title, and that the seller had failed to maintain the property properly during the interim since the sale.[1]

A trial was held, and the judge took the matter under advisement. On March 29, 1979, one month after trial but before judgment was rendered, the seller filed an amended complaint, adding the buyers as defendants. The next day, the court entered judgment against the buyers and in favor of the seller for $3,250. Judgment was also found for the realtor and against the seller for $1,950, or 6 percent of the sale price. The property subsequently was sold by the seller to a third party for $34,000.

The Gabels appeal from the $3,250 judgment against them in favor of Wilfong, and Wilfong appeals from the $1,950 judgment against her in favor of W. A. Schickedanz Agency.

The contentions of the parties to this appeal pose four questions for our determination: (1) whether the seller performed her obligation under the sale contract by tendering good and merchantable title; (2) whether the seller was properly permitted to file an amended complaint after trial, naming the buyers as defendants; (3) whether the earnest money, $3,250, was the proper measure of damages from buyers to seller; and (4) whether $1,950, or 6 percent of the sale price, was the proper measure of the commission owed the realtor by the seller.

Under the contract entered into between the parties, the buyers had a duty to pay the remainder of the sale price upon tender by the seller of a

---

[1] This issue was abandoned on appeal and is deemed waived.

"good and merchantable" title, and whether the title was merchantable is a question of law for the court. (*Parmly v. Head* (1889), 33 Ill. App. 134.) The trial court in the instant case determined that the evidence supported a finding of merchantability. We agree.

Merchantable title is "a title not subject to such reasonable doubt as would create a just apprehension of its validity in the mind of a reasonable, prudent and intelligent person; one that persons of reasonable prudence and intelligence, guided by competent legal advice, would be willing to take and pay the fair value of the land for." (*Eggers v. Busch* (1895), 154 Ill. 604, 606-07, 39 N.E. 619.) Merchantable title need not be a perfect record title. Whenever the abstract, together with explanatory affidavits, evidences an indefeasible title in fee simple, there is merchantable title. *Christopher v. West* (1951), 409 Ill. 131, 98 N.E.2d 722, 724-25.

The buyers contend that the fact that the title insurance company did not insure against unrecorded mechanic's liens, and excepted "rights-of-way for drainage tiles, ditches, feeders and laterals," constituted material defects in the title, which rendered it unmerchantable. However, defendant Gabel at the trial did not testify to any objection relating to mechanic's liens:

> "Q. [Attorney Hillebrand]: Now, as regards that—now your objections to the title boiled down to the question of whether you had access over the road and also an objection regarding laterals or tiles for drainage; right?
>
> "A. [Clark Gabel]: Right."

The buyers presented no evidence to show that there were either mechanic's liens or such rights-of-way for drainage against the property. Moreover, the title insurer waived any exception to recorded liens, and the seller offered both an affidavit asserting that there were no outstanding mechanic's liens, and a hold-harmless agreement against any possible mechanic's liens.

■ A material defect in the title to land is "such a defect as will cause a reasonable doubt and just apprehension in the mind of a reasonably prudent and intelligent person, acting upon competent legal advice, and prompt him to refuse to take the land at a fair value." (*Eggers*, 154 Ill. 604, 607.) The buyers cite cases in which actual liens, or actual rights-of-way, existed against the sale property. These encumbrances constituted material defects in the title. However, the mere possibility of a defect does not show an unmerchantable title. *Lamotte v. Steidinger* (1915), 266 Ill. 600, 107 N.E. 850; *Geithman v. Eichler* (1914), 265 Ill. 579, 107 N.E. 180.

■ In this case, the exceptions in the insurance commitment do not even raise the possibility of a defect, much less constitute a material defect.

Since the buyers made no showing of any actual encumbrance of these types on the property, they could not base their claim on the insurance exceptions alone.

■■ The buyers also contend that the seller's failure to convey title to the roadway leading to the property constituted a material defect. This too is unsupported by the record. The legal description which accompanied the sale contract merely noted the right to ingress and egress over another's property on the existing roadway. Nowhere in the record is there any indication of an encumbrance on that right to ingress and egress, which would constitute a material defect. Furthermore, after the buyers objected to this exception in the title insurance commitment, the insurer agreed to waive it and to guarantee ingress and egress to the property, although not insuring that such access would always be over the existing roadway. The unspecified nature of this guarantee does not make the title unmerchantable, since mere technical objections are not sufficient if the buyer will get substantially what he contracted for. (*Gibson v. Brown* (1905), 214 Ill. 330, 73 N.E. 578.) Here, every indication was that the buyers would have access to the property over the existing roadway, and the title company insured their ingress and egress. That the purchasers would be without such accessibility to their property sometime in the future was a very remote or improbable contingency; it is not a material defect.

■■ Moreover, there is absolutely no basis for the buyers' claim that they would be exposed to the danger of litigation if they completed purchase of the property. A purchaser has a right to require that the title shall be of such a character that he will not be exposed to a reasonable probability of litigation as to its validity. (*Brelie v. Klafter* (1931), 342 Ill. 622, 174 N.E. 882, 884.) The cases cited by the purchasers in the case at bar on this issue are not in point, as they deal with situations where suits were actually pending against the property involved in those cases. Here, the buyers again rely on speculation and insurance exceptions to claim the threat of litigation. No facts are cited to support their claim; the title was free from the reasonable probability of litigation, and that is all that the law requires. (*May v. Nyman* (1972), 3 Ill. App. 3d 580, 587, 278 N.E.2d 97, 102.) A contract for a merchantable title protects the buyer only from such defects as would cause a prudent purchaser to be apprehensive of future trouble. It does not provide him with a defense in the form of technical and unsubstantial objections, permitting him to renounce the contract and escape liability. In the instant case, no material defect was established. Therefore, the seller performed her obligation under the contract by tendering "good and merchantable" title to the property.

■■ Buyers argue that even if it were determined that seller tendered marketable title, they could treat the seller's action of resale of the

property as an offer to rescind, enabling them to recover their earnest money. They rely upon *Hockenbury v. Lorentz* (1976), 35 Ill. App. 3d 983, 343 N.E.2d 90, and *Foreman Trust & Savings Bank v. Bartlett* (1926), 324 Ill. 238, 154 N.E. 904, both cases where seller upon request gave buyer an extension of time in which to perform, yet during the extended period seller sold to a third party without notice to buyer. Those cases stand for the proposition that where a vendor extends the time for buyer's performance of the contract, yet resells the property to a third party without notice during this extended period, he will be held to have suspended his right to declare a forfeiture during that period; and thereafter, his right of forfeiture may be resumed only by giving notice of intention to require performance by buyer within a reasonable time. Clearly, that rule of law has no application to the facts in the present case.

The buyers also contend that the seller should not have been permitted to file an amended complaint, naming the buyers as defendants, on March 29, 1979, one month after trial and just one day before the court entered judgment. The record reveals that the seller named the realtor as defendant in her original complaint, filed January 31, 1978. Later, the realtor filed a counterclaim for interpleader, joining both buyers and seller as counterdefendants. The buyers then filed a counterclaim against the seller and the realtor. The case proceeded to trial, and the contentions of all the parties with regard to the earnest money were presented. Only late in March 1979 did the buyers object to the fact that they had not been named as defendants in the seller's original complaint, whereupon the seller immediately filed her amended complaint.

■ Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46) provides that amended pleadings may be allowed at any time before final judgment, including an amendment to introduce any party who ought to have been joined as a plaintiff or defendant. The statute was designed "to insure fairness to the litigants rather than unduly enhance the technical considerations of common-law pleading." (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 124-25, 302 N.E.2d 64, 66.) In this case it is readily apparent that the buyers' position as defendants in the seller's amended complaint was precisely the same as their position as counterdefendants in the realtor's countercomplaint for interpleader and in their own counterclaim against the seller and the realtor. Even without the filing of the amended complaint of which they complain, the court nonetheless had sufficient pleadings before it which properly raised all the issues, all parties were present, and they were permitted to introduce any relevant evidence bearing on the question of the proper disposition of the $3,250 held by the realtor. That was the gravamen of the counterclaims of both buyers and realtor, as well as

seller's amended complaint. Furthermore, the trial court properly limited the judgment awarded seller against buyers by specifically providing it was "to be paid from the funds being held by the W. A. Schickedanz Agency, Inc." It thus is apparent that the buyers were "informed of circumstances upon which they might predicate a defense" (*Halberstadt*, 55 Ill. 2d 121, 125, 302 N.E.2d 64, 66), and in fact they do not now urge a denial of the opportunity to do so. Furthermore, they proceeded to trial without objection until later, whereupon the amended complaint was filed. We find no error here.

■■ We also believe that the earnest money, $3,250, was the proper measure of damages recoverable by the seller from the buyers. In the sale contract, the buyers agreed to forfeit the earnest money upon their breach. Furthermore, Illinois law has held that even in the absence of an express forfeiture clause—unless expressly prohibited by the contract— earnest money "* * * should be accepted as the bargain and agreement of the parties and as an assurance to the seller that the buyer will perform. Consequently in the event of default by the buyer, such earnest money * * * may be retained in full by the seller without reference to the amount of actual damages which may have resulted to the seller from the buyer's default." *Pruett v. La Salceda, Inc.* (1977), 45 Ill. App. 3d 243, 247, 359 N.E.2d 776, 779.

Seller further contends that the trial court erred in the amount of damages awarded to the realtor. The relevant provisions of the contract relating to the realtor's commission are as follows:

> "7. In the event that real estate listed above is sold during the auction or sold or exchanged between now and the date of the auction or within 90 days after the date of the auction, to any person with whom you, I (we) have negotiations between now and the date of the auction, I (we) agree to pay the auctioneer-realtor a commission of six per cent of the sale or exchange price, and in addition to pay the costs incurred advertising the real estate for sale.

> "8. In the event the real estate listed above is not sold during the auction, I (we) agree to pay a commission of $400.00 and to pay the advertising costs incurred."

She argues that the real estate was not "sold" to Clark and Shirley Gabel, nor was there a "sale" of the real estate resulting from the auction or within 90 days thereafter. We find this a novel argument, since seller would not be entitled to the $3,250 earnest money absent a sale of her property to the Gabels. Furthermore, the record expressly refutes such contention. Among the exhibits received in evidence is a document dated October 25, 1977, entitled "Sale of Realty," in which Clark and Shirley Gabel "acknowledge to have, this day, *purchased* at public auction," the

described real estate, and in which seller acknowledges that she has "received of Clark J. Gabel the sum of $3,250 as a deposit and in part payment for the above described real estate, this day *sold* at public auction for me for $32,500 \* \* \*." (Emphasis ours.)

■■ In the case of *Fox v. Ryan* (1909), 240 Ill. 391, 396-97, 88 N.E. 974, 976, our supreme court has clearly announced its protection of the broker in situations such as presented here:

> "Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed. But where the seller accepts the purchaser and enters into a valid contract of sale with him, the broker's commission is earned whether the purchaser subsequently fails to perform his contract and make the payments agreed upon or not. There are cases in other States holding otherwise, but in *Wilson v. Mason*, 158 Ill. 304, this court refused to follow those cases, denominating them as extreme and exceptional, and said, at page 311: 'The true rule is, that the broker is entitled to his commissions if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract. If, after the making of such a contract, *even though executory in form*, the purchaser declines to complete the sale and the seller refuses to compel performance, *the broker ought not to be deprived of his commissions*. He has done all that he can do when he produces a party who is able, and in binding form offers, to purchase upon the proposed terms. An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller and the purchaser must be bound to each other in a valid contract. So where the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase.' " (Emphasis ours.)

In this case, the buyer and seller entered into a valid contract of sale, and the realtor earned its full commission. Paragraph 8 of the contract, providing for a commission of $400 plus costs of advertising in the event there is no sale, is not applicable in the instant case, as clearly it was intended to cover the situation where no bids were received at the auction

or where the seller declined to sell because of the inadequacy of the bids received. Accordingly, we find that $1,950, or 6 percent of the sale price, was the proper measure of damages awarded to Schickedanz Agency against the seller.

The order of the circuit court of St. Clair County is affirmed.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.