Merrimack
No. 79-390

FELICE M. BELROSE

v.

PHILIP G. BAKER

February 23, 1981

*Maynard, Perkins & Phillips,* of Concord (*William Maynard* on the brief), by brief for the plaintiff.

*Flynn, McGuirk & Blanchard,* of Portsmouth (*John P. McGee, Jr.,* on the brief), by brief for the defendant.

BROCK, J. This is a petition for specific performance of a purchase and sale agreement under which the plaintiff, Felice Belrose, agreed to convey certain real estate to the defendant, Philip G. Baker. A trial was held before a Master (*Robert A. Carignan,* Esq.) who recommended that specific performance be decreed, and the Superior Court (*Batchelder,* J.) approved the master's recommendations. The defendant then filed a notice of appeal in this court.

On November 6, 1975, the plaintiff and the defendant entered into an option agreement on certain real estate in Bow. Under its terms, the option was for one year and was given in consideration of the sum of $2,150. The total purchase price of the land was to be $43,000 with the defendant to receive a credit for the cost of the option, $2,150. Another provision in the agreement provided that the defendant could renew the option for an additional year upon payment of an additional $2,150 and provided that he exercised this right to renew before the term of the first one-year option expired.

On November 10, 1976, intending to renew the option, the defendant tendered the plaintiff a check for $2,150. The plaintiff, however, rejected the tender as being untimely. Each party brought suit against the other and a settlement of these actions was reached just before the cases were to be tried. Under the terms of the settlement, which had been hastily reduced to a handwritten agreement, the plaintiff, who once again agreed to sell the real estate to the defendant, received $2,150, the sum provided for renewal in the original option agreement, and penalty payments in the amount of $4,000. The penalty payments were not to be credited against the agreed-upon purchase price of $43,000. Closing was to take place on November 1, 1977, and the parties agreed that interest at 8.5% would accrue to the plaintiff from that date should the closing be delayed.

Prior to November 1, 1977, the defendant completed a title search on the property which revealed that, in 1961, the plaintiff had granted the Concord Natural Gas Corporation an easement to bury natural gas lines on the property, parallel to and within ten feet of Route 3-A, which borders the plaintiff's land on the west. On November 1, 1977, the defendant's attorney notified the

plaintiff's attorney that the easement rendered the land unmarketable and unsuitable for the defendant's use and that the defendant would not take title to the property.

In February 1978, the plaintiff filed this petition for specific performance. After trial, the master found that the defendant had been aware of the easement since 1975, but had "continued to dangle the carrot in front of the plaintiff in order to tie up the property." The master further found that the easement did not affect the marketability of the property. The defendant was ordered to specifically perform the agreement and to pay the plaintiff the sales price of $43,000 plus 8.5% interest on that amount from November 1, 1977, to November 1, 1979, a total of $7,310 in interest. In addition, the defendant was ordered to pay the plaintiff the interest expense on a loan obligation she had incurred in order to acquire a new residence, because under the terms of the agreement she had to vacate the property on November 1, 1977, and could no longer live there. The master found this additional interest expense to be a direct result of the defendant's breach.

The granting of specific performance to enforce a legal right is a matter within the sound discretion of the trial court. *Johnson v. Korsak, Inc.*, 120 N.H. 412, 415, 415 A.2d 1141, 1143 (1980); *Wehringer v. Bullen*, 120 N.H. 446, 447, 417 A.2d 1, 2 (1980). In cases involving real estate, "specific performance will be decreed unless there are circumstances which make it inequitable or impossible to do so." *Johnson v. Korsak, Inc., supra* at 415, 415 A.2d at 1143; *see Hanslin v. Keith*, 120 N.H. 361, 364, 415 A.2d 329, 331 (1980). The defendant argues that the title to the real estate here is unmarketable and that therefore specific performance would be inequitable. We disagree.

In this State, marketable title is defined as a title "free from reasonable doubt in law or in fact; . . . one which can be readily sold to a reasonably prudent purchaser or mortgaged to a person of reasonable prudence . . . [and one] free from any reasonable objection of a reasonable purchaser." *Paradis v. Bancroft*, 97 N.H. 477, 479, 91 A.2d 925, 926 (1952). The existence of an easement granted to a public utility of the nature and scope involved here does not constitute reasonable grounds for objecting to the title of the land in question. The intrusion is slight, the pipes are buried, and many municipalities have zoning setback requirements that exceed the ten feet now in dispute.

■ Moreover, with reference to the equities involved in this matter, the master found that the defendant was aware of the

easement as early as 1975 and notwithstanding such knowledge, two years later, in 1977, instituted legal action against her to require that she renew the option. The defendant argues that the evidence before the master was insufficient to support a finding that he was aware of the easement in 1975. However, a letter written by the defendant to the plaintiff on April 8, 1975, stated that the defendant's "engineers are working on the many easements that cross [the plaintiff's] land . . . to make sure there are no easements in the way of development." We hold that there was sufficient evidence to support the master's finding and his recommendation that specific performance be ordered.

The defendant next argues that the master erred in ordering him to pay the entire purchase price of $43,000 and in computing the interest due the plaintiff on that sum. We agree.

Under the parties' original option agreement, the sums paid by the defendant for the option and its renewal were to be credited toward the purchase price of $43,000. The parties, subsequent settlement agreement was silent on this point but expressly provided that the penalty payments made thereunder would not be credited toward the purchase price. It is therefore "this court's task to interpret the contract, using facts found by the trial court. [Citation omitted.] In our search for the interpretation that will best reflect the parties' intention, the court considers 'the written agreement of [the] parties, all of its provisions, its subject matter, the situation of the parties at the time, and the object intended.' " *Thiem v. Thomas*, 119 N.H. 598, 602, 406 A.2d 115, 117–18 (1979), *quoting Griswold v. Heat, Inc.*, 108 N.H. 119, 123, 229 A.2d 183, 186 (1967).

Here, the master granted a finding requested by the defendant that the settlement agreement was intended to supplement the original option agreement. Therefore, because the settlement agreement did not expressly state otherwise, the terms of the original option agreement, providing that a credit be given against the sales price of sums paid for the option, control. The defendant, having paid the sum of $4,300 for the option and its renewal, is entitled to have that amount deducted from the purchase price of $43,000. Interest on $38,700 is to be calculated at the rate of 8.5% from November 1, 1977.

The defendant finally argues that the award to the plaintiff of the amount of interest that she has to pay on the loan which she took out in order to secure a new residence is in the nature of penal or punitive damages and should therefore be set aside. *Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 289 A.2d 66 (1972).

■ The record, however, fully supports the master's finding that the interest paid on this loan was a direct consequence of the defendant's breach. Had the defendant fulfilled his obligations under the agreement, the loan would have been paid off on November 1, 1977. However, assuming *arguendo* that the award of this interest is penal or punitive in nature, we would not be inclined to disallow it. We consider the master's express finding that "the defendant has been aware of this easement since at least 1975, and has continued to dangle the carrot in front of the plaintiff in order to tie up the property" as the equivalent of a finding of bad faith on the part of the defendant. Accordingly, we will not vacate this additional award. *See Paquette v. St. Clair*, 119 N.H. 404, 407, 402 A.2d 182, 184 (1979). However, since the defendant's breach of the agreement did not occur until November 1, 1977, interest on that loan should be calculated from that date and not October 12, 1977, as the trial court ruled.

We remand to the superior court for computation of the total award due the plaintiff hereunder. In accordance with the agreement of the parties, the defendant shall be responsible for all taxes accruing on the property since November 1, 1977, and shall comply fully with the order of the superior court as modified herein, without undue delay.

*Affirmed in part; reversed in part; remanded.*

All concurred.