CHEHARDY, Judge.
Defendant National Business Consultants, Inc. (National), appeals from a judgment ordering it to return to plaintiffs, Guy and Alyce LaVenia, $3,500 which they had deposited with defendant as broker for their purchase of a sewer- and drain-cleaning business, and further to pay $750 attorney’s fees. We affirm in part and reverse in part for the reasons set forth below.
The trial judge’s statement of the facts in his Reasons for Judgment is clear and concise. Accordingly, we adopt it here:
“Plaintiffs, Alyce and Guy LaVenia, answered an advertisement in a local newspaper for the sale of a sewer and drain-cleaning business, including trucks and equipment. Plaintiffs called the number given in the advertisement and were advised by defendant, National Business Consultants, through Robert Namer, that he was the broker for an unnamed seller. He indicated to plaintiffs that the business franchise which was for sale, included numerous business machines, office desks and equipment, two (2) vans and several mobile and base station radios.
“Prior to placing the sales ad in the newspaper, Mr. Namer, a business consultant, personally went over the books of the business and analyzed the yearly income from the sewer and drain business to be approximately One Hundred Twenty-Five Thousand and No/100 ($125,-000.00) Dollars. This figure was given to plaintiffs on their first meeting to discuss purchasing the business.
' “At the second meeting between the LaVenias and Mr. Namer, Jerry Allen, *842 co-owner of the business, was present. It was at this meeting that the name of the franchise for sale, Mr. Rooter, was first revealed to plaintiffs. At this time, defendants, Mr. Allen and Mr. Namer, told plaintiffs that the franchise was free to be sold. Plaintiffs, being somewhat familiar with the particular business in question, were aware that Mr. Allen’s business also included plumbing, and asked if the yearly gross quoted to them earlier included his plumbing business. Mr. Namer assured the LaVenias that the income from the plumbing business was separate. Mr. Namer was repeatedly asked by the LaVenias, and even their attorney, for access to the financial reports of Mr. Rooter, but were told by Mr. Namer that, primarily for competitive reasons, they would not be able to review the books until they had furnished to him ‘good faith’ money in the amount of Three Thousand Five Hundred and No/100 ($3,500.00) Dollars. The LaVeni-as testified that Mr. Namer told them they would get all of this ‘good faith’ money back if the financial status of Mr. Rooter was not as he had represented.
“The morning after plaintiffs had signed the purchase agreement and furnished the ‘good faith’ money, Mr. Allen called them and informed them that the figure given them by Mr. Namer was wrong, and that in fact, the more accurate yearly gross figure was approximately one-half of that. The LaVenias immediately contacted Mr. Namer and informed him of the conversation, but Mr. Namer insisted that the parties still must go through with the act of sale.
“Within ten (10) days after the agreement to purchase was signed, the Allens’ attorney contacted Mr. Namer and informed him of the false information in the agreement. He told Mr. Namer that the sale could not be consummated because the Mr. Rooter franchise required that Mr. Allen had to get permission from the home office in Oklahoma for any sale of Mr. Rooter. Additionally, the two (2) vans included in the agreement were under full lease, and as such, the Allens did not have title to sell. The witness further stated that the Allens left town before the date of the act of sale. Further, Mr. Allen sold his share in the business before the date of the act of sale, but after the agreement to purchase was signed.”
When National did not respond to the LaVenias’ demand for return of their deposit, the LaVenias filed suit against National and the Allens. Plaintiffs sought return of the deposit, payment of the costs they incurred in preparing for the aborted sale, attorney’s fees and court costs. National answered and reconvened, demanding that plaintiff pay its commission plus attorney’s fees and costs. (National did not file a third party demand against the Al-lens.) Although Jody Allen apparently had been served with the LaVenias’ suit, no answer was ever filed on behalf of her, Mr. Allen or their Mr. Rooter business. A preliminary default was taken against Jody Allen, doing business as Mr. Rooter, Inc., and/or A-AAA Mr. Rooter, Inc. The Al-lens were absent and unrepresented at trial.
The trial judge concluded the crux of the matter lay in the provisions of the agreement to purchase or sell signed by the parties on August 16, 1978. He cited the following portions:
“The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving unto agent the right to recover commission. [Lines 32-34.]
% * * Sfí í}! if!
“Either party hereto who fails, for any reasons whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all reasonable attorney’s fees and costs incurred by the other party, and/or agent in enforcing their respective rights. [Lines 44 — 45.]”
*843 The agreement also stated the act of sale was to be passed on or before October 1, 1978.
The trial judge decided the agreement to purchase or sell was null and void because the sellers were unable to convey merchantable title within the stipulated time, as required in the agreement. The judge also determined it was the sellers rather than the purchasers who failed to comply with the terms of the offer. Consequently, he concluded the purchasers were not obligated to pay the agent’s commission. He awarded judgment in favor of the LaVenias against all of the defendants in solido, both for the $3,500 deposit and for $750 in attorney’s fees, plus legal interest and all costs. Only National has appealed.
In its brief National urges numerous errors on the part of the trial judge in determining its right to a commission. Most of these are irrelevant. The decision of the trial court was directed only to whether the LaVenias, the purchasers, owed a commission to the broker; the broker’s right to a commission from the Allens was not at issue.
The agreement to purchase or sell provided that the seller was to pay the agent’s commission, which was to be considered earned when the agreement was signed by both parties. The only exceptions were Lines 44-45, quoted above, and another paragraph, Lines 38-41, which provided that if the purchaser failed to comply with the agreement within the time specified, the deposit could be considered forfeited upon the seller’s tender of title to the purchaser;’ and if the deposit were forfeited, the commission would be paid out of it.
Lines 38-41, relative to forfeiture of the deposit, are not applicable to this situation. The seller here never tendered title.
Lines 44r45 state that either party who fails to comply with the agreement is obligated to pay the commission. Similar clauses have been interpreted by prior jurisprudence. Those cases have held a broker is not entitled to a commission without regard to subsequent events. To recover a commission from the buyer on the contract to purchase, the broker must show either that the contract was breached because of the buyer’s fault or that the buyer agreed with the seller to rescind the contract. Dapremont v. Crossley, 367 So.2d 127 (La.App. 4th Cir.1979), writ denied 369 So.2d 710; Becker v. Johnson, 350 So.2d 1259 (La.App. 4th Cir.1977). Such a provision in a sale-purchase agreement is intended to insure the parties would not mutually agree to cancel the sale to the prejudice of the broker’s commission. Williams v. Bel, 339 So.2d 748 (La.1976).
While there is evidence in this case that the Allens and the LaVenias eventually did agree to waive appearances at the act of sale, it is clear this was due to a breach on the Allens’ part rather than the LaVeni-as. Specifically, Mr. Allen had changed his mind about selling to the LaVenias and had moved out of the state. Thus, any failure to comply by the LaVenias was preceded by a failure to comply by the sellers. We conclude, as did the court in Becker v. Johnson, supra, that the broker has not proven breach by the purchasers which alone would make them liable for the broker’s commission if any is due. 350 So.2d 1259 at 1260.
National also asserts the trial court erred because there was no real evidence that merchantable title could not pass and that curative work could not be effected. The objection is inapposite. The evidence established not only that Mr. Allen’s interest in the business was sold to a third party before October 1, 1978, but also that the Allens did not own the vans which were to be part of the sale. In addition, they were required to obtain approval of the franchisor before selling the franchise, which approval was never sought. In light of this evidence, the trial judge was correct in concluding the sellers were unable timely to convey merchantable title. Accordingly, the LaVenias were entitled to demand return of their deposit from National. Munster v. Palama, 198 So.2d 405 (La.App. 4th Cir.1967); Schroeder v. Krushevski, 186 So.2d 640 (La.App. 4th Cir.1966).
*844 Further, it was not the purchasers’ burden of proof to establish that curative work could be performed to render the sellers’ title merchantable. “The prospective buyer in an agreement to buy and sell cannot be called upon to accept a title which reasonably suggests future litigation.” Kempff v. Morgan, 291 So.2d 520, 523 (La.App. 4th Cir.1974), overruled on other grounds, Lanusse v. Gerrets, 357 So.2d 45, 46, 48 (La.App. 4th Cir.1978).
Appellant objects that the trial court allowed the introduction of hearsay evidence by plaintiffs to prove that the gross income figures stated by National in its preliminary analysis were false. This issue is irrelevant. The judgment of the trial judge was not based on misrepresentation or fraud on the part of either the sellers or the broker, but only on the sellers’ failure to deliver merchantable title, and their “failure to comply with the terms of the offer.”
Furthermore, appellant’s objections to the introduction of the hearsay evidence must be deemed to have been waived when this same hearsay evidence was repeated on cross-examination under the questioning of appellant’s own counsel. Finally, hearsay evidence is admissible to prove that a statement was made, although not to prove the truth of that statement. Nolan v. Liuzza, 301 So.2d 892 (La.App. 4th Cir.1974). Thus, Mr. and Mrs. Lavenia’s testimony that Mr. Allen told Mrs. LaVenia that Mr. Rooter was earning only half the amount shown on the purchase agreement was admissible, if only to show he made that remark to Mrs. LaVenia.
Appellant also raises the issue of its listing agreement on behalf of the sellers. This is irrelevant to the question of the broker’s rights vis-a-vis the purchasers.
Similarly, appellant’s allegations that the trial court erred in “upholding [plaintiffs’] contention of fraud” is immaterial. The trial judge made no reference to fraud as the basis for his decision.
On the other hand, we agree with appellant’s contention that National, as broker, should not have been held liable for plaintiffs’ attorney’s fees. There is no provision, either in law or in the purchase agreement, to hold a broker liable for a purchaser’s attorney’s fees in these circumstances.
For the foregoing reasons, the judgment of the district court is reversed insofar as it held appellant, National Business Consultants, Inc., liable for plaintiffs’ attorney’s fees. In all other respects, the judgment is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.