PAMERQUA REALTY CORP., Respondent, v DOLLAR SERVICE CORP., Appellant.

Second Department, April 25, 1983

APPEARANCES OF COUNSEL

*Gehrig, Ritter, Coffey, McHale & McBride (Craig R. Olsen* of counsel), for appellant.

*Francis M. Neary, P. C. (Henry F. Donald* of counsel), for respondent.

**OPINION OF THE COURT**

GIBBONS, J.

The sales contracts which are the bases of this action were entered into on March 18, 1977, and cover two contiguous, improved parcels of land, one fronting Laurel Avenue and the other fronting Main Street, in the Village of Northport. On March 18, 1977 the parcels were held by defendant in single ownership, with one deed covering both. Separate contracts were used for each parcel for the convenience of plaintiff, the buyer, because the latter intended, after the closing, to immediately sell each parcel to prospective third-party purchasers.

Each contract contains the following provision:

"6. Said premises are sold and are to be conveyed subject to:

"a. Zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by existing structures."

The contracts set July 1, 1977 as the date for closing, with "time of the essence". For some reason, which is not made clear in the record, the parcels were not transferred on that date. Neither party claims that failure to close on July 1 constituted a breach of contract.

Sometime in July of 1977, the buyer's attorney was informed by the attorney for the Village of Northport that any subdivision of property required the approval of the village's planning board and that an area variance would also have to be obtained because a division of the property owned by the seller would result in both parcels being in violation of area and parking requirements.[*] These problems were communicated to the seller's lawyer, on or about July 28, 1977.

By letter dated August 5, 1977 the buyer's attorney informed the seller's attorney that the buyer was "unable to consummate the transaction, or either of them at this time" because of the afore-mentioned zoning problems. The letter went on to indicate that the buyer would consider granting the seller an extension of time "to obtain the necessary permission" from the village authorities, but that if the seller refused to attempt to clear up the matter with the village, the buyer would "terminate and cancel each of the above contracts". According to the testimony of the seller's lawyer, on receiving this letter he telephoned the buyer's attorney and told him that, in his opinion, the zoning issue was the problem of the buyer and not the seller and that the latter had no obligation pertaining thereto.

The seller set August 9, 1977 as the date for "a tender of title". The buyer refused to appear. A deed was tendered by the seller on that date, in the absence of the buyer. The tendered deed contains one description covering both parcels. By letters dated August 18, 1977 the buyer demanded

---

[*] The Village Attorney testified at trial that the particular local ordinances involved are chapters 52 and 91 of the Code of the Village of Northport.

the return of the down payments made on both parcels. The instant action was subsequently commenced in early May of 1979, to compel the refund of these moneys.

The general rule is that "where a person agrees to purchase real estate, which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same. He cannot thereafter be heard to object to taking the title because of such restrictions" (*Lincoln Trust Co. v Williams Bldg. Corp.*, 229 NY 313, 318; see 1A Warren's Weed, New York Real Property, Contracts, § 7.11). An exception exists where the contract contains a provision whereby the seller warrants and represents that, upon purchase, the property and its structures will not be in violation of any zoning ordinance or regulation (*Artstrong Homes v Vasa*, 23 Misc 2d 608 [MEYER, J.]; cf. *Anderson v Steinway & Sons*, 178 App Div 507, affd 221 NY 639). In such a case, where it reasonably appears that the vendee will be plagued by zoning problems when he purchases the property, a title defect does exist and the vendee is entitled to demand that the vendor rectify the same or return any moneys paid on account (*Artstrong Homes v Vasa, supra*).

We agree with the trial court's conclusion that paragraph 6a of the contracts brings these purchases within the exception to the general rule. For explication, it is necessary to examine each contract separately. The phrase "[s]aid premises", found in the beginning of each paragraph 6a, applies to the premises set out in the description contained in that particular contract. It does not refer to the entire property owned by defendant. The words "are sold and *are to be conveyed*" (emphasis supplied) refer to the status of the parcel at the time of closing. Therefore, the phrase "subject to: a. Zoning regulations and ordinances * * * which are not violated by existing structures" is an assertion on the seller's part that the structures standing on the parcel described in the contract not only are in compliance with the relevant zoning ordinances at the time the contract is entered into, but also will be in compliance when the deed is delivered.

The effect of this unambiguous warranty on the vendor's part is clear. When the vendee discovered that there was a

problem resulting from the transfer of the property in the form of two parcels, instead of one, it had the right to demand that defendant either clear up the matter with the appropriate village authorities or return its down payments (*Grace v Nappa,* 46 NY2d 560). The vendee had no obligation to obtain the necessary variances or permits, there not appearing in the contracts any clause imposing such a burden on it (cf. *Morgan & Brother Manhattan Stor. Co. v Balin,* 47 AD2d 85, affd 39 NY2d 848).

At trial defendant attempted to avoid this consequence by arguing and trying to show that only one conveyance of the entire property was envisioned by the parties, as evidenced by the tendered deed which covered both parcels. Of course, if the transfer were to be performed with one deed, no zoning problem would appear until the vendee attempted, in turn, to sell the property in two parcels.

In our view defendant's argument is nothing more than an attempt to go outside the perimeters of unambiguous, integrated contracts to explain their meaning and the parties' intent (see *Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 171-172). In any case, as a factual matter, defendant's contention is not borne out by the record. The whole purpose of having separate contracts was to facilitate the resale of the parcels by the vendee. It is illogical to suppose that two contracts were utilized for this purpose, yet that the parties envisioned a conveyance of the entire property by one deed. A letter put into evidence by defendant, dated March 28, 1977, written several months before the zoning problems became an issue, states that "while both of these contracts were separately executed, it is understood that they are to be treated as one transaction to the extent that Dollar will not close one title without the other closing as well". This clearly implies that the parties anticipated two titles being transferred at the closing. It is also noteworthy that, on June 6, 1977, Dollar Federal Savings and Loan Association gave the vendee two separate mortgage commitments, one for each of the parcels. That financial institution is closely associated with defendant. Joseph Scher, who attended the meeting on August 9, when the deed was tendered, is chairman of both corpora-

tions. It is safe to assume that two mortgages were being considered because two parcels were being sold.

That defendant must now return plaintiff's earnest moneys and that its property was not sold to plaintiff are results of defendant's making. These consequences could have been avoided, assuming that the parties were in agreement, by the utilization of one contract for the entire property, or, if two contracts had to be entered into, by the inclusion of different language. This court will not, however, under the guise of interpretation, remake the contracts that the parties did enter into (see *Shepard v Spring Hollow at Sagaponack*, 87 AD2d 126, 131).

For the foregoing reasons, the judgment appealed from should be affirmed, with costs.

LAZER, J. P., MANGANO and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated August 11, 1981, affirmed, with costs.