466 So.2d 671 (1985)
Mario F. VAZQUEZ, and His Wife, Florinda Pezon Vazquez
v.
Etta Mae DAVIS, Ola Davis Hicks, Carrollton Homestead Association, John R. Casey & Joseph T. Casey.
No. 84-CA-393.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
Writ Denied May 13, 1985.
*672 Agustin R. Guitart and Antonio L. Carbonell, New Orleans, for plaintiffs-appellants.
Joseph S. Casey, Casey, Babin & Casey, Greg S. Abramson and Douglas Draper, Dodge, Friend, Wilson & Spedale, Charles A. Boggs, Thomas W. Lewis, Boggs, Loehn & Rodrigue, New Orleans, for defendants-appellees.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
BOWES, Judge.
Plaintiffs appeal from a judgment of the trial court dismissing their suit for breach of contract and for damages in tort against defendants. In essence, the Vazquezes have alleged that defendants failed to deliver to them a merchantable title to their home, and that such failure resulted in certain damages to them, the plaintiffs.
The facts of the case are summarized as follows: plaintiffs-appellants are Cuban immigrants who neither speak nor write the English language. However, they had a daughter living with them who did and who would interpret for them. On February 25, 1973, plaintiffs signed an agreement to purchase property located at 903 Moisant Street, from Etta Davis and Ola Davis Hicks. Etta Davis, at that time, was the widow of Louis Miles Davis, and Ola Hicks his sole heir. The succession of Louis Davis had not yet been opened. On May 15, 1973, Davis and Hicks sold the property to *673 defendant Carrollton Homestead, which, on the same date, resold to the Vazquezes (Carrollton had provided the requisite financing for plaintiffs). This act of sale was executed by authentic act before defendant Joseph Casey and is signed by defendant John R. Casey, as president of Carrollton.
In the property description contained in the act of sale, it is clear that Etta and Louis Davis acquired the property jointly during Mr. Davis' lifetime. At the end of the description is the concluding paragraph:
And acquired by vendors as surviving spouse and sole heir respectively in the Succession of James Miles Davis, said proceedings to be filed in the 24th Judicial District Court of Jefferson Parish.
John Casey testified that Mr. Davis had paid previously to have the succession opened, but that due to the abbreviated period of time between the loan request and the loan closing, for the benefit of plaintiffs and at their insistence, the preliminary (succession) work had not been taken care of as of the date of sale. He also stated he had advised the plaintiffs, through their real estate agent, that he would be unable to complete the succession before closing, but they insisted the loan be closed anyway, apparently so that they would not lose the house they wanted. Plaintiffs deny this.
There the matter lay, until November, 1977, when the Vazquezes signed an agreement to sell the property for $25,500.00. Researching the title in connection with the proposed sale, Attorney F. Joseph Drolla discovered that the succession had never been completed, and, shortly thereafter, there is no doubt that the Vazquezes became aware of the title problem. Casey then began work on the succession.
At this point, plaintiffs' and defendants' account of what happened diverge. Plaintiffs claim to have contacted Mr. Casey, imploring him to complete the succession so that the proposed sale could be consummated. Casey stated, after he began locating Davis' heirs, that plaintiffs came to his office, with their daughter as an interpreter, and begged him not to go forward at that point, inasmuch as they now felt they had not made an advantageous deal and did not wish to be bound by their agreement to sell. Apparently, the incompleted succession could be used as a flaw in plaintiffs' title.
In any event, the agreement expired and the sale did not take place. Later, the Vazquezes returned and requested the title be cleared and Casey continued trying to locate heirs, with some delay because of a previously-scheduled trip to Europe. Plaintiffs filed suit in December, 1978, before the succession was completed in January, 1979. To clear title, the Davises were recognized as heirs and the Vazquezes recognized as transferees and owners of the property. As of the date of the trial then, the Vazquezes were in peaceful possession.
They sought damages alleging past and future loss of profits, including not only the loss from the 1977 sale, but "future loss of profits, calculated by the increased value of the property from the date the contract with the interested purchaser could not be executed to the date of filing of this petition, and to the date of correction of title; mental and physical anguish and distress, and past and future medical expenses resulting therefrom." Later, compensation was demanded because the "negligence and bad faith of defendants ruined plans of the petitioners to move to another city where plaintiff had better opportunity of employment ... and were planning to acquire a better residence."
The trial court ruled in favor of the defendants, finding that the plaintiffs failed to establish their allegations and additionally failed to establish monetary loss. In the judgment, the trial judge emphatically stated that he believed the testimony of John Casey and that it set out the true facts of the matter. We affirm as we cannot say these findings are manifestly erroneous.
Plaintiffs alleged fifteen assignments of error, which form basically two issues: Did the defendants negligently or otherwise *674 fail to render merchantable title to the Vazquezes in 1973, and, if so, did any compensable damages result?
It is elementary that ownership of property is acquired by succession, by the effect of obligations, and by operation of law. C.C. Art. 870. In the present case, the subject property was acquired in contract by Mr. and Mrs. Louis Davis. Upon Mr. Davis' death, his heir, Mrs. Hicks, did not become full owner of the property in question until the succession was completed and she was sent into possession. The right to possession is contingent on compliance with the applicable provisions of law, i.e., appropriate procedural requisites: C.C. 871 et seq. It follows, therefore, that Mrs. Hicks could not validly transfer ownership in property before succession proceedings were had. Mrs. Davis herself could transfer only her one-half community share of the property.
It is therefore incontrovertible that, in 1972, merchantable title was not passed between the Davises, Carrollton Homestead, and the Vazquezes. However, the trial judge concluded that the plaintiffs were made aware of this situation by Casey and that he advised them he would remedy same in due course. We agree.
A vendor must deliver title free of encumbrances and suggestion of future litigation and which is good and merchantable... Property has a merchantable title when it can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and questions involved. Young v. Stevens, 209 So.2d 25 (La.1968).
Neither the Davises nor Carrollton Homestead delivered such merchantable title to the Vazquezes. It is entirely irrelevant in the particular circumstances whether or not the Vazquezes knew or did not know of the defective title at the date of sale. Merchantable title was warranted by both vendors (Davis and Carrollton) and this warranty was breached. Therefore, whether or not the Vazquezes later in 1978 requested the title not be cured is not significant, because such would not relieve defendants of their obligations under the title warranty.[1]
The defendant Joseph Casey, who was the Notary before whom the sale was executed, was not retained nor requested by any party to examine or cure the title, nor to open the succession. As notary, he had no role in warranting title. Therefore, we find no fault on his part whatsoever.
However, we agree with the trial judge, after a careful reading of the record, that no damages were proven by plaintiffs. The title was cured, in a manner that has long been accepted by title examiners, and, insofar as title is concerned, there is no further suggestion of litigation. The vendors, defendants, have therefore fulfilled their obligations under the warranty.
The Vazquezes still own the property and have had the opportunity on several occasions to sell it for a substantial profit. They may still do so. The damages sought by plaintiffs are speculative at best. Plaintiffs would have us consider, for example, the loss of profits of $13,000 from the prospective 1977 sale, calculate its present value according to an inflation index, and award such amount to plaintiffs. Had plaintiffs been obliged to sell and had actually sold their property at a loss, or for less than the 1977 amount, a calculable loss would be ascertainable and appropriate. As it is, plaintiffs will likely realize a substantial gain on the eventual sale of their home. In any case, no loss has been demonstrated.
Plaintiffs also request us to consider the difference in value of a home they sought to purchase in 1979 for $48,500.00, which by the time of trial was valued at $55,000.00, *675 as damages. We seriously doubt that a basis for such damages exists in the present circumstances; furthermore, no evidence was introduced as to the reason for the increased value of the house, i.e., whether it was due to inflation, circumstances, or owner improvement.
Plaintiffs request damages for inconvenience, hinging on the assertion that Mr. Vazquez planned to move to Miami, buy a bigger and better house, and get a better job. Plaintiff urges us to consider the current rate of unemployment, Mr. Vazquez's age, the loss of opportunities, etc. We find no support for the plaintiff's conclusionary statements, since Mr. Vazquez had no job in Miami, never quit his present employment, and never attempted actual relocation. In short, we find all of these damages without foundation in either law or the facts of this case.
Finally, although Mrs. Vazquez testified that she suffered physical and emotional distress due to the problems with the house title, her physician could not link her health with the legal issues involved at trial, and, in fact, gave several hypotheses for Mrs. Vazquez's problems. The trial judge obviously did not believe that plaintiffs established a connection between the legal problems and the health of Mrs. Vazquez. Such judgment call is well within the trial judge's discretion, and will not be disturbed in the absence of manifest error. Reading the record as a whole, we cannot say the trial judge was clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Cannon v. Baron, 289 So.2d 835 (La.App. 4th Cir.1974).
We find no basis for an award of attorney's fees under C.C. Article 2545, as urged by plaintiffs, inasmuch as the "vice" in title involved here was not concealed, but was apparent.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by appellants.
AFFIRMED.
NOTES
[1] Under LSA C.C. 2475-76 the seller is bound to the obligation of warranting the thing he sells, the warranty having two objects: first is the buyer's peaceable possession, and second the hidden defects or redhibitory vices.