Donald E. BETHUREM and Colleen Bethurem, Appellants (Plaintiffs),

v.

Edward L. HAMMETT and Elsie Mae K. Hammett, Appellees (Defendants).

No. 86–200.

Supreme Court of Wyoming.

May 15, 1987.

Robert W. Brown of Lonabaugh and Riggs, Sheridan, for appellants.

Robert E. Holstedt of Holstedt Law Offices, P.C., Sheridan, for appellees.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and GRANT, District Judge.

URBIGKIT, Justice.

Buyers sued, raising breach-of-warranty issues, to rescind the purchase of a residence because the lot and structures encroached into the dedicated street. Sellers won in trial-court decision, and Buyers appeal by presented issues of contractual warranties of title merchantability and parol-evidence admissibility.

## FACTS

In 1983, appellants, the Bethurems (Buyers), contracted to purchase a residence in Sheridan, Wyoming from appellees, the Hammetts (Sellers). In exchange for the realty, Buyers made a cash down payment and agreed to monthly installment payments for the purchase-price balance. In 1985, a dispute arose from encroachment of the residence structure, the garage and the cemented-in fence into the dedicated city street, as then confirmed by surveys by both parties.

After unsatisfactory negotiations, Buyers sued to rescind the sales agreement, claiming that Sellers had materially misrep-

resented the property in failing to apprise Buyers of known encroachments. At trial, Buyers relied on provisions of the executed Offer, Acceptance & Receipt (Specific Performance Contract), a pre-printed document which stated:

"8. Title shall be merchantable in the Seller, except as stated in this paragraph. Subject to payment or tender as above provided and compliance with the other terms and conditions hereunder by Purchaser, the Seller shall execute and deliver a good and sufficient statutory warranty deed in favor of those persons named in Paragraph 7 above, including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale, and deliver the same to said Purchaser at closing, which shall occur on or before April 29, 1983, conveying said real and personal properties free and clear of all liens and encumbrances, except:

"(a) The general taxes for 1983;

"(b) Liens for special improvements, if any;

"(c) Easements for utilities;

"(d) Subject to building and zoning regulations;

"(e) City, state and county subdivision laws;

"(f) Reservations, restrictions and easements of record, if any; and

"(g) Except

"9. Any encumbrance required to be paid shall be paid by closing agent at the time of closing from the proceeds of this transaction.

"10. The Seller covenants that upon execution of this Contract:

"(a) The above-described property is in substantial compliance with applicable city, county and state subdivision laws, requirements and regulations in force and effect as of that date, EXCEPT:

"(b) There are no known defects, EXCEPT:

"(1) Those which are readily visible upon inspection; and

"(2)"

Executed documentation in the case includes the standard Offer, Acceptance & Receipt form (a 1979 Wyoming Association of Realtors model instrument), a typed sales agreement, and an executed warranty deed. The warranty deed is not in evidence, so that possible exceptions to its general warranty provisions cannot be determined. The typed sales agreement, which also included a nonpayment provision, in part provided:

"IV

"Sellers shall, at their expense, furnish Buyers with an Abstract or Title or Commitment for Title Insurance covering the above described premises. Said Abstract of Title or Commitment for Title Insurance shall be of recent date and shall show good merchantable title in Edward L. Hammett and Elsie Mae K. Hammett, husband and wife, free and clear of all encumbrances. Buyers shall have ten (10) days within which to cause said Abstract or Commitment to be examined by an Attorney of their choice. Any defects in title shall be forthwith corrected by Sellers."

Contrary to the covenant in Paragraph 10(a) of the standard Offer, Acceptance & Receipt that the property was in substantial compliance with all applicable city, county, and state subdivision laws, requirements and regulations, those street line encroachments also violated Section 23–22 of the Sheridan City Code, which provides that

"[n]o person shall erect, build, set up or maintain in whole or in part any fence, sign, shop, post, building or obstruction whatsoever in or upon any street, avenue, alley, sidewalk or public ground within the city."

The property was repossessed by Sellers, and is presently in their possession. The trial court judgment gave Buyers a ten-day option to bring the installment payments current in order to regain purchase possession. Apparently that election was not exercised.

## CONTENTIONS OF THE PARTIES

Buyers contended that the breach of the sales agreement covenants was a misrepre-

sentation entitling them to rescission, also asserting that encroachment onto the public street was a defect which renders title unmarketable in violation of Sellers' covenants in Paragraphs 8 and 10 of the standard offer document and Section IV of the typed sales agreement. At trial, the parties took opposite positions regarding Buyers' knowledge of the encroachment. Buyers claimed that Sellers led them to believe that there were no defects, that the transferred realty included all the land and improvements enclosed by the fence, and that the enclosed property was marketable. Sellers contended that they had orally discussed the encroachments and that Buyers assured them that the defect would not pose a problem since they planned to build a house farther back on the property. Appellants objected to the introduction of this oral evidence of preagreement communicated title defect, but the objection was overruled and direct conflict testimony was consequently introduced.

The trial court found generally in favor of the defendants, Sellers, and denied the claim for rescission. The following arguments are now presented:

I. Misrepresentation of the boundaries of real property entitles the purchaser to rescind.

II. Encroachment onto the city street is a defect in the premises rendering title unmarketable.

III. Encroachment as contrary to the city ordinance justifies rescission.

IV. Hammetts' alleged oral disclosures of the encroachment problem violate the parol-evidence rule and are inadmissible.

V. Sufficient admissible evidence was produced at trial to entitle Bethurems to be granted rescission.

We reverse.

1. The words "merchantable" and "marketable" are synonymous and interchangeable when used in the context of a land contract. *United States v. Mansion House Center, North Redevelopment Co.,* 607 F.Supp. 392 (E.D.Mo.1985), aff'd 796 F.2d 1039 (8th Cir.1986); *Frank's Nursery Sales, Inc. v. American National Insurance*

## ENCROACHMENT AS WARRANTY VIOLATION

This court set forth the general rule regarding a seller's misrepresentation of boundaries in *Meeker v. Lanham,* Wyo., 604 P.2d 556, 559 (1979), stating:

"With regard to the boundary lines, the rule regarding misrepresentations concerning the boundaries of property, is correctly pointed out to us by the appellant:

" 'A purchaser has the right to rely upon the representations of the seller as to the boundaries of the land, and if the seller misrepresents the true boundary of the land, whether innocently or intentionally, it is ground for rescission by the purchaser.' "

From Buyers' contentions we discern their three claims of false representations to have been made by Sellers as covenants in the contractual documents: first, that title was merchantable (marketable);[1] second, that property was in compliance with the relevant city ordinance; and third, that there were no known defects in title or condition. The representation that there were no defects overlaps with the representation that title was marketable, and consequently our discussion of the two representation claims is combined in first addressing the question whether the encroachments (defects) rendered the title unmarketable.

The Montana Supreme Court has stated: " 'The term "marketable title" is difficult of definition ... The most practical test is as to whether the title is such that a third person may reasonably raise a question after the time the contract would have been completed. If the conditions of the title warrants such an attack, the purchaser may reject the title as unmarketable.' " *McCarthy v. Timberland Resources, Inc.,* Mont., 712 P.2d 1292, 1294 (1985), quoting from *Silfvast*

*Co.,* 388 F.Supp. 76 (E.D.Mich.1974); *Tri-State Hotel Co., Inc. v. Sphinx Investment Co., Inc.,* 212 Kan. 234, 510 P.2d 1223 (1973). See *Bakken v. Price,* Wyo., 613 P.2d 1222, 1226 (1980), for a Wyoming case where the terms were used interchangeably.

*v. Asplund,* 93 Mont. 584, 20 P.2d 631, 637 (1933).

Similarly, the uniform rule regarding marketability has been explained in an Oregon decision:

"A purchaser is not required to accept title which might reasonably be expected to involve litigation. '[I]f there is doubt and uncertainty about the title sufficient to form the basis for litigation, * * * it cannot be thrown upon the purchaser to contest that doubt * * *.' " *Cameron v. Benson,* 57 Or.App. 169, 643 P.2d 1360, 1363 (1982), rev'd on other grounds, 295 Or. 98, 664 P.2d 412 (1983), quoting from *Wollenberg v. Rose,* 45 Or. 615, 78 P. 751 (1904).

See also *Medallion Homes, Inc., v. Thermar Investments, Inc.,* Texas App., 698 S.W.2d 400, (1985); and *Glaser v. Minnesota Federal Savings and Loan Association,* Minn.App., 389 N.W.2d 763 (1986).

There is also overwhelming authority for the proposition that title is unmarketable where it cannot be readily sold to a reasonably prudent person, familiar with the facts. *Wilson v. Fenton,* Iowa, 312 N.W.2d 524 (1981); *Vazquez v. Davis,* La. App., 466 So.2d 671, writ denied 468 So.2d 574 (1985); *Madhavan v. Sucher,* 105 Mich. App. 284, 306 N.W.2d 481 (1981); *Glaser v. Minnesota Federal Savings and Loan Association,* supra; *Tedco Development Corp. v. Overland Hills, Inc.,* 200 Neb. 748, 266 N.W.2d 56 (1978); *Belrose v. Baker,* 121 N.H. 48, 426 A.2d 454 (1981); *Brown v. Herman,* 75 Wash.2d 816, 454 P.2d 212 (1969).

■ Whether title to real estate is marketable is a question of law for the court. *Wilfong v. W.A. Schickedanz Agency, Inc.,* 85 Ill.App.3d 333, 40 Ill.Dec. 625, 406 N.E.2d 828, (1980); *Myerberg, Sawyer & Rue, P.A. v. Agee,* 51 Md.App. 711, 446 A.2d 69 (1982).

■ In this case, the fence encroached approximately 17 feet into the city street, the garage encroached approximately eight feet, and the actual residence encroached approximately four feet. Clearly, such substantial encroachments subjected Buyer to potential litigation involving the purchased property. Furthermore, a reasonably prudent person familiar with the nature and extent of these encroachments would decline to purchase at an otherwise reasonable market price. Accordingly, we find that the title was unmarketable. See *Chesapeake Homes, Inc. v. McGrath,* 249 Md. 480, 240 A.2d 245 (1968).

In analogous situations numerous courts in other jurisdictions have found title unmarketable, and have granted buyers of realty the right to rescind their purchase agreements. In *Zatzkis v. Fuselier,* La. App., 398 So.2d 1284, writ denied 405 So.2d 533 (1981), the conveyed property encroached onto neighboring property. The gutter encroached six inches; the roof encroached two feet; and the step and fence encroached eight-tenths of a foot. That court held that the encroachments rendered title to the property unmarketable, and allowed the purchaser to rescind. Likewise, in *Morrison v. Fineran,* La.App., 397 So.2d 838 (1981), it was held that a fence which encroached onto neighboring property for a distance at the front of 0.31 feet gradually increasing to 1.24 feet at the rear rendered title unmarketable, and the prospective purchaser was permitted to reject the sale.

Similarly in *Kempff v. Morgan,* La.App., 291 So.2d 520 (1974), overruled on other grounds by *Lanusse v. Gerrets,* La.App., 357 So.2d 45 (1978), the property in question included a fenced backyard with a deck and dressing rooms for a swimming pool. A survey of the property revealed that:

"1. There was a five foot servitude inside of and adjacent and parallel to the rear property line.

"2. The dressing rooms had been built on the servitude.

"3. The wooden fence extended an additional 10.7 feet beyond the rear property line.

"4. The wooden patio had been constructed entirely upon the 10.7 feet to which sellers had no title.

"5. The roof of the dressing rooms overhung the property line by 0.9 feet.

"6. The improvements were constructed in violation of several portions of the

Jefferson Parish Zoning Ordinances." 291 So.2d at 522.

That court held that the title was unmarketable because it suggested future litigation, and ordered the seller to return the prospective purchaser's deposit. See also *LaVenia v. National Business Consultants, Inc.*, La.App. 83, 425 So.2d 840, 844 (1982), writ denied 432 So.2d 269 (1983). In *Young v. Stevens*, 252 La. 69, 209 So.2d 25 (1967), where a fence encroached ten inches, tapering down to three inches onto the adjoining lot to the rear of the property, and encroached six inches onto the adjoining property on the side, the Louisiana Supreme Court concluded that the title was not merchantable, and permitted the purchaser to rescind the contract. That court stated:

"* * * [A] person buying property whose improvements encroach upon his neighbor is likely to sustain a law suit to defend his right to possession of the property sold to him beyond his title. [Citations.]

"* * * What makes the title unmerchantable * * * is not necessarily the extent of the encroachment, but the fact that it suggests litigation." 209 So.2d at 28.

In *Wertheimer v. Byrd*, 278 Minn. 150, 153 N.W.2d 252 (1967), where the purchase agreement failed to mention the existence of an easement, the court held that:

"An outstanding easement makes title to realty unmarketable in a situation where the title to be conveyed as specified in the contract to purchase has not been made subject to such easement." 153 N.W.2d at 253.

The decision affirmed the trial court's finding as a matter of law that the purchaser was entitled to rescind the purchase agreement.

In *Rhodes v. Astro-Pac, Inc.*, 51 A.D.2d 656, 378 N.Y.S.2d 195 (1976), aff'd 41 N.Y.2d 919, 394 N.Y.S.2d 623, 363 N.E.2d 347 (1977), it was said:

"* * * Since the easement over defendant's property in favor of the adjoining landowner was an encumbrance which rendered the seller's title unmarketable [citation], and it was an encumbrance which had not been excepted by the seller's agreement to convey marketable title, the seller breached its contract and the purchaser is entitled to [the return of his down payment]." 378 N.Y.S.2d at 197.

*Carrick v. Gorman*, 232 Ark. 729, 340 S.W.2d 377 (1960), is factually similar to this case:

"The undisputed evidence shows that Gorman's title is not merchantable. Two surveyors testified that the brick wall of the hotel building encroaches upon the adjoining land, some of which is owned by the United States. It goes almost without saying that in this situation the seller's title is not merchantable." 340 S.W.2d at 379.

The case of *Dukas v. Tolmach*, 2 A.D.2d 57, 153 N.Y.S.2d 392 (1956), presents a strikingly similar fact pattern. That court stated:

"The claim of unmarketability is based upon the following:

"1. A stone retaining wall, lawn and plantings alleged to encroach (from 2¾ inches to 16 feet 2¾ inches) on a city owned street.

"2. Another stone retaining wall alleged to encroach on the street to the extent of 17 feet 1½ inches.

"3. An access ramp or driveway alleged to encroach about 17 feet on the street.

"4. A stairway, consisting of stone and masonry steps, walls and landing providing ingress and egress to the property, alleged to encroach more than 17 feet on the city street.

\* \* \* \* \* \*

"The question posed therefore is whether under these facts (the so-called encroachments being clearly established by the evidence) defendant's title is marketable. We think it is not. A purchaser may not be compelled to accept a title which will subject him to a lawsuit or which will require him to expend substantial sums of money in order to comply with the law [citations]." 153 N.Y.S.2d at 394.

■ We agree with the reasoning found in these cases, and think it is unquestionably applicable to the situation in this case. Where improvements to realty encroach onto adjoining property, exposing the buyer to a reasonable possibility of litigation, title to the property is unmarketable as a matter of law.

As further authority for our finding that the encroachments rendered title unmarketable, we also approve the following general statements:

"In the absence of any particular agreement or stipulation in regard thereto, the vendee in a contract for the sale of land is entitled to have the walls of the building, or buildings, upon the land which he has contracted to purchase stand completely upon the land conveyed, and where they encroach to a substantial extent upon adjoining premises, the title to the land to be conveyed is unmarketable." 77 Am Jur 2d Vendor and Purchaser § 218, p. 395.

"Encroachment of structures on or over a public way may render title to the property unmarketable depending largely upon the character and extent of the encroachment and the laws of the municipality wherein the property lies. A vendor does not have a marketable title if his building encroaches upon the public streets to such an extent as to threaten the vendee * * * with a burdensome expense in altering the building to meet the requirements of the law." 77 Am Jur 2d Vendor and Purchaser § 219, pp. 396–397.

Under the city ordinance, maintenance of the encroachments was unlawful, and irrespective of any failure to enforce it, the ordinance could require removal. In order to move the buildings and fence to conform to the requirements of the city ordinance, the buyers were faced with a burdensome expense. The testimony at trial described the work as costing many thousands of dollars. The text of the Sheridan city ordinance and the potentially substantial expense to obtain compliance supports a determination of unmarketability of title. See *McFarland v. Cobb*, Mo., 64 S.W.2d 931 (1933); *Pamerqua Realty Corporation v. Dollar Service Corporation*, 93 A.D.2d 249, 461 N.Y.S.2d 393 (1983); *Moyer v. DeVincentis Construction Co.*, 107 Pa.Super. 588, 164 A. 111 (1933).

■ This court agrees with the rule as stated in *Pamerqua*, supra:

" * * * [W]here the contract contains a provision whereby the seller warrants and represents that, upon purchase, the property and its structures will not be in violation of any zoning ordinance or regulation * * * [and] where it reasonably appears that the vendee will be plagued by zoning problems when he purchases the property, a title defect does exist and the vendee is entitled to demand that the vendor rectify the same or return any moneys paid on account [citation]." 461 N.Y.S.2d at 395.

■ Where, contrary to a seller's covenant of merchantability, title to realty is unmarketable, a buyer, Bethurems in this case, is entitled to rescission. *Shaffer v. Earl Thacker Co. Ltd.*, 3 Hawaii App. 81, 641 P.2d 983 (1982); *Myerberg, Sawyer & Rue, P.A. v. Agee*, supra; *McCarthy v. Timberland Resources, Inc.*, supra, 712 P.2d 1292; *Carrick v. Gorman*, supra, 340 S.W.2d at 379.

## RESCISSION UNDER WYOMING LAW

■ In Wyoming, the law imposes the following conditions for a successful rescission action based on misrepresentation:

" * * * [B]efore a buyer may have a contract rescinded and restitution made, he must prove in a clear and convincing fashion that one, the seller misrepresented the interest in land which was being sold, in a material and substantial aspect; two, the buyer relied upon the false representation; and three, as a result the buyer suffered injury." *Hagar v. Mobley*, Wyo., 638 P.2d 127, 132 (1981).

That three-part misrepresentation analysis also supports the right to rescission in this case. First, the breach of the covenant of merchantability and the breach of the covenant of compliance with the city ordinance amount to a misrepresentation of the

interest in the realty being sold, in a material and substantial aspect.

Second, Buyers relied on that misrepresentation. We note that these representations were included in the contractual documents and were a constituent part of the written undertaking which both parties signed. Furthermore, it is difficult to imagine that Buyers would have been willing to purchase the property had they known that the encroachments existed, raising the marketability problems.

The third and final criterion under *Hagar v. Mobley,* supra, is that Buyers suffered injury as a result of Sellers' false representations. There can be no doubt of injury where, as here, the false representation would subject Buyers to the expense to remove the encroachments for legal property usage. *Dukas v. Tolmach,* supra. Furthermore, the fact that the buyers came to be in possession of property by purchase as now subject to difficulty of resale also constitutes injury and monetary damage.

The facts of Hagar are comparable to this case to the extent that that decision was reasoned from an analogy of misdescription cases to its facts, involving the term of an underlying state lease form from which possession was derived by the vendor. See *Chesapeake Homes, Inc. v. McGrath,* supra, 240 A.2d 245; *E.H. Dreifus Lumber Co. of Oregon v. Werner,* 221 Or. 467, 351 P.2d 684 (1960); and *Dugan v. Jones,* Utah, 615 P.2d 1239 (1980). This kind of an encroachment is a boundary problem in reality.

We conclude that Buyers meet the three-part Mobley test for entitlement to rescission on the ground that they were injured by their reliance on the false representations that (1) title to the property was marketable, and (2) the property was in compliance with all applicable laws, including city ordinances.

"The right to rescind exists for various reasons. Among them are enumerated want of title * * *." *Hawkins v. Stoffers,* 40 Wyo. 226, 276 P. 452, 456 (1929). Since Sellers have regained the property, rescission only invokes repayment. *Twing v. Schott,* 80 Wyo. 100, 338 P.2d 839 (1959).

See *Flygare v. Brundage,* 76 Wyo. 350, 302 P.2d 759 (1956), where the remedy of rescission was recognized, although the facts are dissimilar.

## PAROL EVIDENCE ADMISSIBILITY

In affirmative responsive argument, Sellers contend that, lacking misrepresentation, Buyers are not entitled to rescind the agreement because Buyers accepted title with full knowledge that the encroachments existed. In order to substantiate these contentions, Mr. Hammett, Seller, testified at trial that he orally informed Buyers of the encroachments, and, furthermore, that the encroachments were readily visible upon inspection because the boundary between the parcel and the street was marked by two pieces of string tied to a fence.

Buyers denied that the statement was made, and objected to its introduction, arguing that any testimony about the oral representations which communicated the existence of the encroachment violates the parol evidence rule. They claim that this evidence, extrinsic to the parties' written agreements, contradicts the parties' clear intentions as expressed by the specific terms of the written and mutually signed documents.

One of the covenants states:

"There are no known defects, EXCEPT:

"(1) Those which are readily visible upon inspection."

From this, Sellers contend that trial testimony is not precluded by the parol evidence rule because it did not contradict, alter, add to, or vary their agreement, but merely explained which defects were readily visible upon inspection. A piece of string on a fence, which basic fact was controverted in this case, does not prove more than its existence without explanatory oral testimony to communicate purpose. There is no difference in whether the oral testimony seeks to disprove warranty status by a prior notice of encroachment, or in description of the surveyed encroachment, by explanation of the string and its survey purpose. In either case, parol evidence was tendered to disprove

warranties in the later signed written sales documents. An unexplained piece of string on a fence is just that, and is not determinative as an encroachment readily visible upon inspection. It is similar to an unexplained river. *Dugan v. Jones*, supra. We find that the evidence should have been excluded by the parol evidence rule.

 As a general rule, courts will ascertain the intentions of the parties by interpreting the language that is used in the contract and will not resort to adding what has been omitted or omitting what has been added. *Bakken v. Price*, supra, 613 P.2d at 1230, McClintock, J., concurring in part and dissenting in part; *Goodman v. Kelly*, Wyo., 390 P.2d 244, 248 (1964). If the contract is in writing and the language is clear and unambiguous, the intention is to be established from the words of the contract by considering the contract as a whole and reading each provision in light of all other provisions. *Samuel Mares Post No. 8 v. Board of County Commissioners of Converse County*, Wyo., 697 P.2d 1040, 1043 (1985); *Knadler v. Adams*, Wyo., 661 P.2d 1052, 1053 (1983); *Amoco Production Co. v. Stauffer Chemical Co. of Wyoming*, Wyo., 612 P.2d 463, 465 (1980).

In this case, we must read the covenant that there are no defects except those visible upon inspection in light of other covenants that title was merchantable and that the property complied with all applicable statutes and regulations. Taken as a whole, we find that the written contractual terms preclude the existence of the encroachments that violate the title warranties. *Kincheloe v. Milatzo*, Wyo., 678 P.2d 855 (1984).

We note that this is a transaction involving real property, where written documentation is customarily required by the Wyoming statute of frauds:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith:

 * * * * * *

"(v) Every agreement or contract for the sale of real estate * * *." Section 1–23–105, W.S.1977, Cum.Supp.1986.

This statute reflects a legislative policy to avoid the uncertainty and potential fraud which results from reliance on oral agreements involving the transfer of real estate. *Kincheloe v. Milatzo*, supra.

In *Crosby v. Strahan's Estate*, 78 Wyo. 302, 324 P.2d 492 (1958), this court relied on the following language from the Supreme Court of Ohio and the United States Supreme Court:

 " 'The statute of frauds is founded in wisdom, and has been justified by long experience. As was said by Mr. Justice Grier in *Purcell v. Miner*, 4 Wall. 513, 517 (18 L.Ed. 435):

 " 'The statute is "absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony."

 " 'It should be enforced * * *.' " 324 P.2d at 496, quoting from *Newman v. Newman*, 103 Ohio St. 230, 133 N.E. 70, 74, 18 A.L.R. 1089 (1921).

We reaffirmed our reliance on those authorities and cited *Crosby v. Strahan's Estate* with approval in *Remilong v. Crolla*, Wyo., 576 P.2d 461, 464 (1978). We also relied upon another oft-quoted statement that

 " " " * * * [t]he policy of the law requires that everything which affects the title to real estate shall be in writing, and that nothing shall be left to the frailty of human memory or as a temptation to perjury." ' " 576 P.2d at 464, quoting from *Stephens v. St. Louis Union Trust Co.*, 260 Ill. 364, 103 N.E. 190, 193 (1913).

 Oral contracts involving real estate are difficult to enforce, and all the agreements and understanding which affect the transfer of real property should be included in the written sales contract. We think it important to protect the integrity of written contracts, particularly where they involve the transfer of realty, and to do otherwise would throw Wyoming real estate transactions into uncertainty and chaos. Under the sound policy of the parol

evidence rule, this court will not allow a party to interject alleged oral understandings into an agreement where those understandings contradict, alter, add to, or vary the plain terms of the writing. *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65, 68 (1982); *Hollabaugh v. Kolbet,* Wyo., 604 P.2d 1359, 1361 (1980); *Goodman v. Kelly,* supra.

> " * * * It has long been recognized by this and other courts that a different rule would soon render instruments in writing of no value and the temptation to commit perjury would be increased." *Hollabaugh v. Kolbet,* supra, 604 P.2d at 1361.

In this case, Sellers represented that the title was merchantable, and that the property complied with all applicable statutes and regulations. This was not so. They cannot now assert that these sweeping covenants may be contradicted by claiming that they informed Buyers about two strings tied to the fence on the property which marked the boundary. These markings go to the very enforceability of the contract, indicating a defect in the property and its title—that a portion of the land and parts of the buildings extended out into the dedicated city-owned street.

 Nowhere in the written documents is there any indication that a visible inspection revealed or would reveal the street encroachments. The only indication that any irregularities were discoverable by visible inspection is Sellers' claim that there was string on the fence which would show the boundary of the conveyed parcel. That is not enough. This oral evidence about those markings contradicts Sellers' written covenant of marketability and written covenant that the property was in compliance with all city ordinances, and is not admissible.

> " * * * [I]f a vendor wishes to convey subject to an encumbrance affecting title the contract should include the appropriate exception [citation], and the Court may not impose an agreement other than that which was arrived at between the parties [citation]." *Atlas Realty of East Meadow, Inc. v. Ostrofsky,* 56 Misc.2d 787, 289 N.Y.S.2d 784, 786 (1967).

Where a defect acceptance agreement which is essential to a seller's right to enforce a contract to transfer real property is not included in the written contract, we will not, under the circumstances of this case, allow Sellers to make the contract enforceable by proving that agreement did exist by parol evidence introduced at trial. See *Cordova v. Gosar,* Wyo., 719 P.2d 625 (1986).

## CONCLUSION FOR REVERSAL

Excluding the inadmissible parol evidence, there is no other support for Sellers' contention that they informed Buyers about the encroachments and that the sale was consummated despite intrinsic unmarketability of title. The trial court's decision was necessarily premised upon Sellers' parol contradiction of the parties' written agreement, and must be reversed. Since Buyers did not receive what the written agreement promised, rescission was legally justified, with the terms for entry of relief to be determined by the trial court, with or without additional evidence upon remand. See *Walter v. Moore,* Wyo., 700 P.2d 1219 (1985).

Reversed and remanded.

CARDINE, J., filed a dissenting opinion in which GRANT, District Judge, joined.

GRANT, District Judge, filed a dissenting opinion.

CARDINE, Justice, dissenting, with whom GRANT, District Judge, joins.

I dissent. I would affirm the decision of the trial judge who observed the witnesses, listened to their live testimony, judged their credibility, and accorded such evidence the weight to which he determined it was entitled. When, as in this case, the parties' written agreement specifically provides "[t]here are no known defects, *EXCEPT: (1) Those which are readily visible upon inspection,*" (emphasis added) it is patently clear that the parties were properly allowed to testify orally as to what was readily visible upon inspection. It was the function of the trial court to accept or

reject that testimony and to resolve the disputed statements of fact that were present. That is not our function. We should not be deciding upon a cold record whether a piece of string on a fence is significant. If we adhere to our oft-stated rule that we accept the evidence favorable to the successful party as true and leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, we are left with evidence supporting the decision of the trial court and it ought to be affirmed.

GRANT, District Judge, dissenting.

I join in Justice Cardine's dissent. After a thorough review of the record I am convinced that the buyers, unable or unwilling to fulfill their legal obligation under the contract, used the encroachment issue to avoid those obligations. Having heard the evidence, the trial court was convinced of this. That is, the trial court was convinced that the buyers simply did not rely on the alleged misrepresentations.

The majority cite *Hagar v. Mobley,* Wyo., 638 P.2d 127, 132 (1981), setting forth the three elements justifying rescission. Of course this is the law. But the trial court did not believe that the evidence proved the buyers' alleged reliance and so found.

This case vividly illustrates the soundness of the principles recited by Justice Cardine. The majority cite abundant sound legal authority which, in view of the record, is not properly applicable.