■ ALEKSANDER KOPP et al., Appellants, v MARIANNE BOYANGO, Respondent. [889 NYS2d 200]—

In an action, inter alia, to recover damages for breach of contract, the plaintiffs appeal, (1) as limited by their brief, from so much of an order of the Supreme Court, Kings County (F. Rivera, J.), dated April 29, 2008, as, upon reargument, adhered to a prior determination in an order dated February 8, 2008, denying their motion for summary judgment on the complaint and granting the defendant's cross motion for summary judgment dismissing the complaint and awarding judgment on the defendant's counterclaim for liquidated damages, and (2) from a judgment of the same court dated May 7, 2008, which, upon the orders, dismissed the complaint and awarded the defendant the principal sum of $72,500 on the counterclaim.

Ordered that the appeal from the order dated April 29, 2008 is dismissed; and it is further,

Ordered that the judgment is reversed, on the law, upon reargument, the order dated February 8, 2008 is vacated, the

plaintiffs' motion for summary judgment on the issue of liability is granted, the defendant's cross motion for summary judgment is denied, and the order dated April 29, 2008 is modified accordingly; and it is further,

Ordered that one bill of costs is awarded to the plaintiffs.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho,* 39 NY2d 241 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

The defendant, as seller, entered into a contract of sale of residential property dated April 15, 2005, with the plaintiffs, as purchasers, for a sales price of $725,000. The closing was to take place on or about November 1, 2005.

After entering into the contract of sale, the plaintiffs learned that the property's certificate of occupancy described it as a single-family dwelling with an attached garage even though the home no longer had a garage since it had previously been converted by the defendant or her predecessor in title into additional living space. The defendant did not possess the necessary permits or variances for the conversion of the garage into living space.

The plaintiffs, through counsel, requested from the defendant written confirmation from the New York City Building Department that the conversion of the garage into living space was legal as it was presently constructed or, in the event that the defendant could not produce this documentation, the plaintiffs demanded a return of their contract down payment. Rather than produce the requested documentation, the defendant advised the plaintiffs by letter dated December 7, 2005, that since, as of that date, the closing had yet to occur, the defendant designated December 20, 2005, at 2:00 P.M., at her attorney's office, as the closing date. The letter stated that the date "is of the very essence" and that failure to appear and close title on that date would be construed as a default on the part of the plaintiffs. In response, counsel for the plaintiffs advised the defendant's attorney by facsimile dated December 12, 2005, that the defendant's "time of the essence letter" was rejected given the defendant's refusal to remedy the illegal conversion of the garage. The plaintiffs did not attend the December 20, 2005 closing.

In their initial motion for summary judgment against the defendants, the plaintiffs maintained that the defendant breached the contract by failing to obtain a permit, license, or

other authorization from the New York City Department of Buildings for the conversion of the one-car garage to residential use. The plaintiffs specifically argued that the defendant breached both paragraph 15 of the rider to the contract, which indicated that the premises was a legal one-family dwelling even though the certificate of occupancy showed that the property was a one-family dwelling with a one-car garage, and paragraph 11 (a) of the contract, which required the defendant to "comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority." The plaintiffs also contended that the defendant refused to comply with certain provisions of the Administrative Code of the City of New York (hereinafter the Administrative Code).

Moreover, the plaintiffs contended that the defendant's violation of the Administrative Code voided the contract, thereby entitling the plaintiffs to summary judgment. With respect to this second argument, the plaintiffs maintained that Administrative Code former § 27-147 required that no building, construction, alteration, or plumbing work may be commenced until a written permit had been issued and that Administrative Code former § 27-118.1 prohibited the conversion of a property into a dwelling for more than the legally-approved number of families. Specifically, the plaintiffs argued, without citing to a specific contract provision: "Thus, since the contract required that the defendant comply with law, and if complying with such laws was impossible, and/or required action which was not in compliance with the Building Code (since the garage had already been converted to a living space, complete with a wall and windows where the garage door had been, and the addition of a bathroom, stove and gas lines, etc.) the contract itself was void, and defendant had no entitlement to force plaintiffs to close title, and retain their down payment for refusing to do so."

The plaintiffs also contended that Administrative Code former § 26-126.1 detailed the penalties, including progressive fines, for which a person found to be in violation of the Administrative Code would be responsible. In reply to the defendant's opposition, the plaintiffs also referred to paragraph 4 of the contract, which stated that the property was to be transferred subject to the laws and governmental regulations that affect the premises provided that the premises did not violate those laws and regulations.

Upon hearing oral argument on the plaintiffs' motion for summary judgment, the Supreme Court denied the motion and granted the defendant's cross motion for summary judgment.

Although counsel for the plaintiffs argued that the contract mandated that the premises were to be compliant with all New York City ordinances and the papers submitted to the Supreme Court by the plaintiffs in support of their motion cited to specific provisions of the Administrative Code the plaintiffs alleged were violated, counsel for the plaintiffs failed to apprise the Supreme Court of those sections of the Administrative Code during oral argument and erroneously stated that the papers "may not have specifically cited it."

The plaintiffs moved for leave to renew and reargue their motion for summary judgment. In their motion, which the Supreme Court properly identified as being one for leave to reargue only, although already having contended in their original motion papers that the contract required the defendant to comply with the law and having noted this specific provision in their reply, the plaintiffs specifically cited to paragraph 4 (a) of the contract in the moving papers. Paragraph 4 (a) of the contract stated that the premises were to be transferred subject to "laws and governmental regulations that affect the use and maintenance of the premises, provided that they are not violated by the buildings and improvements erected on the premises." Leave to reargue was granted by the Supreme Court and upon hearing oral argument, the Supreme Court adhered to its original determination. Upon reargument, the Supreme Court should have vacated the order dated February 8, 2008, and granted the plaintiffs' original motion for summary judgment.

With respect to the plaintiffs' motion for summary judgment, the plaintiffs established their prima facie entitlement to judgment as a matter of law by showing that the property was not in compliance with the relevant Administrative Code ordinances despite the warranty and representation in the contract that the property was not in violation of any application laws or ordinances (see *Pamerqua Realty Corp. v Dollar Serv. Corp.,* 93 AD2d 249 [1983]). "The general rule is that 'where a person agrees to purchase real estate, which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same' . . . An exception exists where the contract contains a provision whereby the seller warrants and represents that, upon purchase, the property and its structures will not be in violation of any zoning ordinance or regulation" (*id.* at 251, quoting *Lincoln Trust Co. v Williams Bldg. Corp.,* 229 NY 313, 318 [1920]). In this situation, in the event that the purchaser determines that the property is not in compliance with the relevant laws or ordinances, the purchaser has the right to demand that the seller rectify the situation

with the authorities or to receive a refund of his or her down payment (*id.* at 252).

Administrative Code former § 27-147 states that no construction can be done unless a written permit has been issued by the commissioner. The defendant admits to making alterations without the necessary permits and is, therefore, in violation of the Administrative Code and thereby, paragraph 4 (a) of the contract.

The plaintiffs' failure to appear at the December 20, 2005, closing date subsequent to receipt of a "time of the essence" letter does not preclude them from commencing an action to recover damages for breach of contract. The defendant, having received sufficient notice of the defect, failed to procure the necessary permits for the conversion. Therefore, the defendant was in breach pursuant to paragraph 4 (a) at the time of the closing. Due to the defendant's breach, the plaintiffs were not required to tender performance or attend the closing (*see Iannelli Bros. v Muscarella,* 24 NY2d 779 [1969]; *Moray v DBAG, Inc.,* 305 AD2d 472 [2003]; *Rhodes v Astro-Pac, Inc.,* 51 AD2d 656 [1976], *affd* 41 NY2d 919 [1977] ["a purchaser is not required to make a tender when it is apparent that the seller cannot or will not perform"]). Moreover, while a purchaser must normally first tender performance and demand good title to place a seller in default, "when the vendor is given notice of the defect prior to the scheduled closing date and does nothing to correct it until after the closing date, the purchaser need not tender performance as such tender would be meaningless" (*Klaiber, LLC v Coon,* 48 AD3d 856, 857 [2008]).

Here, the plaintiffs' attorney informed the defendant's attorney as early as May 23, 2005, that the one-car garage did not appear on the survey. The plaintiffs' attorney reiterated his concerns in a letter to the defendant's attorney dated September 14, 2005, stating that the survey did not reflect the one-car garage cited on the certificate of occupancy. The September 14th letter *requested* the defendant to produce a certificate of occupancy modification to rectify the discrepancy. Both items of correspondence preceded the November 1, 2005, closing date and the December 20, 2005, time-of-the-essence closing date. In opposition to the plaintiffs' showing, the defendant failed to raise a triable issue of fact (*see Zuckerman v City of New York,* 49 NY2d 557 [1980]). Consequently, the plaintiffs are entitled to the return of their down payment. Moreover, in light of the foregoing, the defendant was not entitled to judgment as a matter of law on its counterclaim. Rivera, J.P., Florio, Dickerson and Austin, JJ., concur. [*See* 19 Misc 3d 1128(A), 2008 NY Slip Op 50934(U).]