■ MANUEL P. ASENSIO, Appellant-Respondent, v CASA 74TH DEVELOPMENT, LLC, et al., Respondents-Appellants. [913 NYS2d 96]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered March 5, 2010, which granted defendants' motion to cancel a notice of pendency filed by plaintiff with respect to a newly constructed condominium unit and for summary judgment as to the complaint and their counterclaims only to the extent of cancelling the notice of pendency, modified, on the facts, to deny the part of the motion that sought to cancel the notice of pendency, and otherwise affirmed, without costs.

Triable issues of fact, including whether construction of the condominium unit was "substantially completed" at the time of the proposed closing, preclude summary dismissal of the complaint and judgment in favor of defendants on their counterclaims. Defendant sponsor's failure to substantially complete the work would have constituted a breach of the agreement to sell the unit and relieved plaintiff of his duty to attend the closing and tender the balance of the purchase price (*see Kopp v Boyango*, 67 AD3d 646, 650 [2009]). For that reason, defendants' argument that plaintiff may not seek specific performance because the agreement was terminated on May 20,

2009, when the purported cure period expired without any closing, is also unavailing.

Contrary to defendants' contention, plaintiff did not choose either of the inconsistent remedies of rescission and specific performance in the earlier escrow dispute proceeding before the Attorney General; he argued in the alternative, and he withdrew his claim before the Attorney General issued any decision. Having never definitely opted for rescission, plaintiff is not precluded from pursuing specific performance in this action (*compare 331 E. 14th St. v 331 E. Corp.*, 293 AD2d 361 [2002], *lv dismissed* 98 NY2d 727 [2002]).

In view of defendants' failure to demonstrate their entitlement to summary judgment, there is no need to reach their contention that plaintiff's default entitles defendant sponsor to retain the down payment monies and to recover costs and attorneys' fees.

Since, as the motion court found, defendants are not entitled to summary judgment, the notice of pendency filed by plaintiff is not subject to mandatory cancellation (CPLR 6514 [a]; *see Sorenson v 257/117 Realty, LLC*, 62 AD3d 618, 619 [2009], *lv dismissed* 13 NY3d 935 [2010]). Nor does the record support a discretionary cancellation pursuant to CPLR 6514 (b) on the ground that plaintiff has not prosecuted this action in good faith (*see 551 W. Chelsea Partners LLC v 556 Holding LLC*, 40 AD3d 546, 548-549 [2007]). Contrary to defendants' contention and the court's implicit finding, plaintiff's eight-month delay in commencing the action is an insufficient basis for concluding that he was motivated solely by a desire to impede a sale of the condominium unit to a third party. In any event, it cannot be said, on the existing record, that plaintiff's efforts to protect his rights to the apartment, through litigation, were improper. Concur—Friedman, J.P., DeGrasse, Manzanet-Daniels, JJ.

Nardelli and Freedman, JJ. dissent in part in a memorandum by Nardelli, J., as follows: Since I believe that plaintiff terminated the contract when he wrote a letter to the sponsor's attorney demanding the return of his purchase money deposit, and advising "that a material amount of construction work remains completely undone," I would affirm the order in its entirety, and thus leave the court's decision to strike the notice of pendency undisturbed.

In May 2007, defendant Casa 74th Development, LLC, as sponsor, filed an offering plan for a proposed condominium at 255 East 74th Street, in Manhattan. In pertinent part, in a section entitled "Rights and Obligations of Sponsor," the plan provided: "[I]f Purchaser finds that Sponsor's improvements as

described in the Plan or in the Option Agreement or other writing duly executed and delivered by Sponsor, have not been fully completed, although such improvements have been substantially completed, then Sponsor or its designated representative and Purchaser will at the time of such execution agree upon and set forth in the Inspection Statement a list of the incomplete work to be completed by Sponsor following the Closing without provision for escrow. Sponsor's obligation thereunder shall survive delivery of the deed to the Purchaser. The failure of Sponsor to complete such work shall not be grounds for Purchaser to delay the Closing or to unilaterally refuse to pay the full Balance of the Purchase Price at Closing."

In July 2007, the sponsor and plaintiff executed an option agreement for the sale of Unit 24C. The agreement expressly incorporated the offering plan by reference, and recited that the plan's provisions would govern in the event of any inconsistencies between the two. The agreement also provided: "[I]f all other prerequisites not involving the construction of the Unit are met, Purchaser shall be obligated to close and complete payment of the full Purchase Price (without any credit against or abatement in the Purchase Price and without provision for escrow) once a Temporary or Permanent Certificate of Occupancy is issued for the Unit (notwithstanding any construction items noted on Purchaser's Inspection Statement (as hereinafter defined) remaining for Sponsor to complete and/or correct in accordance with its obligations under the Plan, and notwithstanding the incomplete construction and/or decoration of any other portions of the Building not affecting the Unit)."

The agreement further provided that in the event that plaintiff did not attend and pay the purchase price at a scheduled closing, then the agreement would be "deemed cancelled." In such case, the sponsor would be entitled to retain all of the down payment monies and would be entitled to sell the unit to another purchaser. The agreement also gave the sponsor the right to cancel the agreement if the purchaser failed to perform other obligations, including payment of the purchase price when due.

Closing was initially set for January 2009, and was rescheduled several times. On March 31, 2009, the sponsor gave notice that closing had been rescheduled to April 15, 2009.

On April 8 and 14, 2009, plaintiff's architect inspected the premises, as provided for in the agreement. The architect reported some 104 construction defects and incomplete items. Plaintiff took the position that the construction of the unit was substantially incomplete, and refused to close on the unit.

On April 16, 2009, the sponsor declared plaintiff to be in default, and advised him that unless he cured the default by closing on the unit on or before May 20, 2009, the agreement would be cancelled and the sponsor would retain the deposit monies as liquidated damages.

On May 8, 2009, plaintiff wrote the sponsor a letter demanding the return of the $897,000 in deposit monies, asserting "that a material amount of construction work remains completely undone." A week later, on May 15, 2009, plaintiff filed an application with the Attorney General's Real Estate Finance Bureau for a "Determination on the Disposition of Downpayments." Plaintiff asserted that the agreement was "unenforceable" and "void given the Sponsor's refusal to address any one of the construction issues raised by the Applicant." As an alternative to rescission of the agreement, plaintiff requested that if the agreement were found to be enforceable, he be given a "reasonable opportunity to close" on the sale.

Thus, as of May 8, 2009, two possibilities were presented. The first is that the condominium was substantially complete in accordance with the provisions of the contract, and, therefore, plaintiff was obligated to close upon demand by the sponsor. The second is that the condominium was not substantially complete and plaintiff was within his rights to refuse to close, and demand a return of his down payment. Which of the alternatives is correct is an issue that remains to be decided.

In the interim, however, plaintiff is not entitled to maintain a lis pendens on the property, and hold the condominium hostage during the course of the litigation. Inasmuch as he, on two different occasions, evinced an intention to terminate the contract, his sole recourse is to get his money back, if, indeed, the sponsor failed to comply with its obligations under the contract.

The majority finds that plaintiff never definitely opted for rescission of the contract, and, thus, had not made an election of remedies, citing *331 E. 14th St. v 331 E. Corp.* (293 AD2d 361 [2002], *lv dismissed* 98 NY2d 727 [2002]). Yet, in that case, this Court made clear that an election of remedies will be found to have been made if " 'a party must have chosen one of two or more co-existing inconsistent remedies, and in reliance upon that election, that party must have also gained an advantage, or the opposing party must have suffered some detriment' " (*id.* at 361, quoting *Prudential Oil Corp. v Phillips Petroleum Co.*, 418 F Supp 254, 257 [SD NY 1975], citing, inter alia, *Hill v McKinley*, 254 App Div 283 [1938]).

I believe that plaintiff had elected the remedy of rescission with his May 8th notice of cancellation, and confirmed it in his

May 15th submission to the Attorney General. It is evident that plaintiff has now gained an advantage, and the sponsor has suffered a detriment. Plaintiff advised on May 8th that he was refusing to close, and demanded a return of his down payment. He did not file a notice of pendency until January 8, 2010, eight months later, when he also filed a complaint in which he sought, alternatively, specific performance or damages. In the interim, however, the sponsor had obtained another buyer. Plaintiff himself sent an e-mail to the prospective buyer's attorney two days after the action was instituted, in which he advised that he had filed a lis pendens. The e-mail stated, in pertinent part, "I understand from you that your proposed buyer has agreed to a price and accepted a contract that he has or is prepared to execute."

It is therefore evident that plaintiff recognized that the sponsor was prepared to sell the unit to another buyer, and that he consequently had lost significant economic leverage with the sponsor in his dispute over the condition of the unit. By pressuring the prospective plaintiff to withdraw, and now seeking specific performance, plaintiff sought to gain an improper advantage, and the sponsor suffered a detriment.

Such circumstances justify a finding that the portion of the action seeking specific performance was commenced not in good faith, but as a Damoclean sword to force the sponsor into incurring the cost of carrying the unit while the dispute over whether plaintiff is entitled to a refund is litigated (*see Israelson v Bradley*, 308 NY 511, 516 [1955]). Vacatur of the notice of pendency pursuant to CPLR 6514 (b) was thus appropriate, and the order should be affirmed.